(No. 25814.

The People of the State of Illinois, Defendant in Error, *vs.* John Howe, Plaintiff in Error.

*Opinion filed December 12, 1940.*

JOSEPH R. ROACH, ANTON S. MIKULA, and EDWARD M. KEATING, for plaintiff in error.

JOHN E. CASSIDY, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, RICHARD B. AUSTIN, and ALEXANDER J. NAPOLI, of counsel,) for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

The defendant, John Howe, was indicted in the criminal court of Cook county, October 23, 1930, for robbery while armed with a gun. May 2, 1940, he was tried before a jury, convicted, and subsequently sentenced to imprisonment in the penitentiary. Howe prosecutes this writ of error.

November 27, 1929, the county court of Cook county, in an *ex parte* proceeding, adjudged defendant an insane person, committed him to the care and custody of his father, and on April 14, 1930, finding his condition unimproved, ordered that he be recommitted to the Kankakee State Hospital, at Kankakee. The record does not disclose whether he was actually confined under the order, nor is there any

evidence that this order has been set aside. From June until October 13, 1930, it appears, however, that he was employed as a watchman in Chicago. Undisputed testimony discloses that the defendant, then about twenty-three years of age, on October 16, 1930, entered a store managed by William Estabrook, displayed a gun, demanded and obtained money, and, while searching for additional funds, was arrested. Following his apprehension on the day last named, a jury was impanelled in the criminal court, upon a petition of his father, to inquire into defendant's mental condition, and the jury, upon the testimony of his father, alone, found him insane on November 17, 1930. Adjudged insane, he was committed to the Kankakee State Hospital at Kankakee, but escaped approximately two months later, on January 24, 1931. It appears that the defendant, employed from 1933 to 1939 for equal periods as a house officer in a hotel and as a State policeman, was not again apprehended until the latter part of 1939. January 29, 1940, a jury impanelled in the criminal court found the defendant then, and at the time of the impanelling, sane. Defendant thereupon entered a plea of not guilty on the charge of armed robbery. Upon the trial the testimony offered in his behalf was restricted to the question of his sanity on October 16, 1930. By its verdict of guilty, the jury found the defendant was sane on the day he committed the crime of robbery with a gun, as charged in the indictment. Subsequent to the entry of judgment and imposition of sentence, defendant's counsel presented a petition to set aside the verdict and vacate the judgment and sentence, setting forth the adjudication in 1929 and the order of commitment in 1930 in the county court. The petition was denied.

The principal contention of the defendant is that on October 16, 1930, he was legally an insane person subject only to the jurisdiction of the county court, since its decree and order of commitment had not been modified or set aside. He argues that regardless of whether he was actually sane

on October 16, 1930, and on January 29, 1940, the criminal court did not have jurisdiction over him for the purpose of trial, conviction or sentence. Section 13 of the act relating to the care and detention of lunatics (Ill. Rev. Stat. 1939, chap. 85, par. 13, p. 2001) vests jurisdiction in the county courts only over insane persons who are not charged with a crime, and section 30 provides that the act shall not be construed to apply to insane persons, or persons supposed to be insane, who are in custody on a criminal charge. Section 12 of division 2 of the Criminal Code, (Ill. Rev. Stat. 1939, chap. 38, par. 592, p. 1192,) ordains that the sanity or insanity of a person charged with the commission of a crime shall be determined by a jury in the court where the cause is pending. This section, so far as material to the present inquiry, provides that if, upon the trial of a person charged with crime, it shall appear that the act was committed as charged, but that the accused was insane when the act was committed the jury shall so find and shall also find whether the accused has recovered. If he has recovered he shall be discharged from custody, but if not, he shall be committed to the Department of Public Welfare. It is further provided that if, prior to trial, a jury is impanelled to ascertain before a plea is entered whether a person charged with a felony is insane, and determines that he was insane at the time of the impanelling, he shall be committed to the Department of Public Welfare; but that if the jury finds that he is not insane, or, on any hearing subsequent to commitment, determines that he has permanently recovered from insanity, he shall be subject to trial.

In *People* v. *Maynard,* 347 Ill. 422, the trial court denied a petition for the appointment of a guardian *ad litem* for the accused, who had been adjudged insane in the county court prior to the date of the offense charged in the indictment. No record existed of his restoration by the county court. In reversing the judgment of conviction and remanding the cause to the criminal court, because the issue

of the sanity of the accused had not been determined before he was placed on trial, this court stated: "The petition here averred that plaintiff in error had been regularly adjudged insane. The general rule is that where insanity is proved as existing at a particular time it will be presumed to continue until disproved. * * * Whether the presumption arising out of the adjudication of insanity in the case of plaintiff in error has been overcome was a question of fact requiring evidence, and though there has been a lapse of nearly ten years since he was adjudged insane, which tends to materially weaken that presumption, no authority of which we are advised holds that in the absence of proof of facts lapse of time is alone sufficient to remove the presumption. Indeed, it is a matter of common knowledge that insanity is often permanent. The evidence on the trial disclosed that plaintiff in error was discharged from the State hospital in 1922 as improved. This, of course, is evidence, as other facts and circumstances affecting the averments of the petition are evidence. Whether it removed the presumption of insanity arising out of the finding of the county court in 1921 could not be determined without a hearing on the petition." In *People* v. *Varecha,* 353 Ill. 52, the trial court denied a petition to vacate a judgment and sentence entered upon a plea of guilty, which disclosed that prior to the perpetration of the offense charged, the juvenile court, by authority of the act relating to the care and detention of feeble-minded persons, (Ill. Rev. Stat. 1939, chap. 23, par. 354, p. 343,) had adjudged the defendant feeble-minded and committed him to a State hospital, from which he later escaped. The quoted language of section 9 of this act, providing, almost identically with section 11 of the act relating to the care and detention of lunatics, that the decree of feeble-mindedness shall continue binding "until rescinded or otherwise regularly superseded or set aside," was construed by this court to mean that the decree con-

tinues in force until it is superseded or set aside in a judicial proceeding. Concerning an unsworn report of a physician, the only evidence on the question of sanity offered before trial, this court declared: "There is no provision in the Criminal Code that upon a plea of guilty by an accused person who has been adjudicated to be feeble-minded by a court of record, an unsworn report may rescind the decree." It was also held that the determination of his mental competency could not be postponed to a time subsequent to the entry of the plea of guilty, and evidence then introduced in aggravation and in mitigation of the offense, concerning, in part, the mental competency of the accused, could not relate back to render the plea valid. The cause, therefore, was remanded to the criminal court.

In the present case a jury, impanelled conformably to the mandate contained in the Criminal Code, on November 17, 1930, found the defendant then insane. January 29, 1940, a jury again impanelled pursuant to the statute found the defendant sane on the date last named. The record of those hearings is not before us, and we are not warranted to presume that the decree of the county court was not considered on those occasions. Moreover, the presumption raised by the adjudication of November 17, 1930, although manifestly stronger evidence of the continuing insanity of defendant in 1940 than the county court's decree and order of commitment in 1929 and April, 1930, was determined by the verdict of the jury on January 29, 1940, to have been rebutted by the evidence. The sanity of the defendant for the purpose of trial, therefore, was properly established. Defendant admits that the medical testimony upon the trial on May 2, 1940, mentioned the adjudication of the county court. The records of the county court would have been only cumulative evidence of the defendant's mental condition on October 16, 1930, and he cannot complain of his own failure to produce evidence which was known and

available to him during the trial. (*People* v. *Harrison,* 359 Ill. 295; *People* v. *Mindeman,* 318 id. 157.) The petition of defendant's counsel was properly denied.

Before the trial the defendant moved to quash the indictment because of an alleged violation of the statute in the selection of the grand jury which indicted him. Defendant's contention that the court erroneously denied this motion is without merit. *People* v. *Lieber,* 357 Ill. 423.

The testimony with respect to the defendant's mental condition on October 16, 1930, the date of the commission of the offense charged, need not be narrated in detail. The opinion that he was not of sound mind on the day in question was expressed by the defendant's father, retired from the detective bureau since 1930, his mother, a neighbor, a former co-employee, and a friend now on the police force. On the other hand, in the opinion of a witness who had employed him from June to October 13, 1930, of William Estabrook, the complaining witness, and of Patrick Hanlon and Earle Peake, managers of two stores robbed by the defendant in 1930, defendant was sane on the day in question. Expert medical opinions were expressed by Dr. Clarence A. Neymann, and Dr. Francis J. Gerty. Dr. Neymann stated that the defendant was a feeble-minded, borderline defective, able to distinguish between right and wrong, but not to choose between them. Dr. Gerty, having examined the defendant before and after the date of the offense, stated that he had the ability not only to distinguish between right and wrong, but to choose between them. The latter witness, in 1930, had rendered an opinion that the defendant, although a border-line mental defective type, could not be designated insane. He defined "mental defective" as a term descriptive of a person lacking in intelligence, rather than of an insane person. In sur-rebuttal, John J. Murphy, a former associate of defendant's father at the detective bureau, and D. C. Hardies, formerly employed by one of the companies robbed by defendant in

1930, who appeared in response to Murphy's call to his home in Hammond, Indiana, based their opinions of defendant's insanity upon his incoherent story of the crime during two appearances in court in November, 1930.

Defendant insists that the testimony of Peake and Hanlon was inadmissible as disclosing crimes other than the one charged in the indictment. The witnesses described the robbery of their respective stores by the defendant in September and October of 1930, and testified that at the police station on October 16, 1930, he recognized them and named the place of each robbery, and that they were present in the felony court when he obtained a continuance upon his own motion. The defendant had also been observed by Peake in the sanity hearing in the criminal court in November, 1930. Evidence tending to prove a material fact is admissible, notwithstanding it may disclose another indictable offense. (*People* v. *Spaulding,* 309 Ill. 292; *People* v. *Cione,* 293 id. 321.) The opinion of a lay witness on the question of sanity will not be admitted in evidence unless all the facts upon which it is based are disclosed to the jury. (*People* v. *Krauser,* 315 Ill. 485.) This court, in *Jamison* v. *People,* 145 Ill. 357, held that a conversation of a lay witness with the accused was admissible despite its tendency to prove a crime other than the one charged, since it was the foundation of his opinion of sanity, but that the court, by its instruction, should limit consideration of this testimony to the question of sanity. The testimony of Peake and Hanlon was no more detailed than necessary to disclose the foundation of their lay opinions, and the jury received instructions in each instance to consider it only in relation to the issue of defendant's sanity or insanity.

Defendant contends that the arguments of the assistant State's attorneys to the jury were improper and prejudicial. The testimony of Peake and Hanlon was mentioned only as substantiating their opinions of sanity. Failure of the

prosecuting attorney to call available witnesses other than defendant's father at the sanity hearing on November 17, 1930, was mentioned as evidence of dishonesty and dereliction of duty, and reference was made to the prevalence of crime in Chicago in 1930. These comments were promptly recognized as objectionable by the trial judge, who reprimanded counsel and instructed the jury to disregard the remarks. The remaining objection of defendant is directed against representations that he was acquainted with persons of importance, had been protected by his father's influence as a detective, and had visited the psychopathic hospital whenever he was in trouble, and that his escape from the asylum at Kankakee had been made when he was sane, in order to avoid the trial he knew would follow discovery of his sanity. In closing arguments, counsel not only may comment upon facts directly proved, but may refer to all facts fairly inferable from the evidence. (*People* v. *Herkless*, 361 Ill. 32.) The prosecuting attorney is entitled to draw legitimate inferences from the facts and circumstances proved, to discuss the conduct of the accused, and to urge a fearless administration of the criminal law. (*People* v. *Heywood*, 321 Ill. 380; *People* v. *Spaulding, supra.*) The representations in question were founded upon the evidence, the details of which would unduly prolong this opinion, and were within the scope of proper argument.

Finally, defendant contends that the verdict is against the weight of the evidence. The lay witnesses testifying that defendant was insane on October 16, 1930, were his parents and friends, with the exception of Hardies, who appeared at the request of a friend. On the other hand, defendant was employed in responsible police positions immediately prior to the perpetration of the offense in 1930, and again during the intervening period between his escape from the State hospital in 1931 and his apprehension in 1939, and in the opinion of several witnesses, including one who had employed him at his father's request in 1930, he

was sane. The credibility of witnesses and the weight to be accorded their testimony are determinable by the jury, which is in a position to observe their conduct and demeanor, and unless the verdict is palpably against the weight of the evidence, it will not be disturbed. *People* v. *Arbuthnot,* 355 Ill. 577; *People* v. *Johnson,* 298 id. 52.

The judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*