**UNITED STATES ex rel. SAMMAN v. RAGEN, Warden.**

No. 9494.

Circuit Court of Appeals, Seventh Circuit.

April 19, 1948.

Michael A. Romano and Milton M. Ruben, both of Chicago, Ill., for appellant.

George F. Barrett, Atty. Gen., and William C. Wines, Asst. Atty. Gen. (Raymond S. Sarnow and James C. Murray, Asst. Attys. Gen., of counsel), for appellee.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

SPARKS, Circuit Judge.

Appellant appeals from the denial of his application for discharge on writ of habeas corpus. He is held in the custody of the Warden of the Illinois State Penitentiary on account of violation of a parole from a 1931 sentence for armed robbery, and a second sentence for armed robbery following his conviction therefor in 1945.

The sole issue presented by the petition and appeal from the denial thereof is whether the fact that appellant had been adjudicated insane by a California court and committed to an asylum in 1931 and never thereafter legally restored to sanity ipso facto renders the subsequent convictions and sentences by the Illinois courts null and void, entitling appellant to release from the custody of the Warden. Appellant was represented by counsel in both criminal proceedings. It does not appear that the fact of his adjudication of insanity was called to the attention of the court at any time during the 1931 proceedings, and it was not called to its attention until after a plea of guilty and discharge of the jury in the 1945 trial, during the course of a hearing in mitigation in which appellant testified at length to the court as to his earlier history.

The transcript of appellant's testimony on the hearing in mitigation in 1945 was introduced in evidence in the District Court hearing on habeas corpus. He was born in California and attended school there, including two years in college. During the first World War he was in the United States Army, from 1916 to 1919. After his discharge he returned to California and went to work as an automobile salesman for a short time, but was committed to a hospital for the insane about 1921. He testified as to the nature of his illness, schizophrenia and psychoneurosis, for which he was given shock treatments. He was released at the end of a year but soon recommitted for a few months and again released, after which he was sentenced to San Quentin Penitentiary for eighteen months for forgery. A few months after his release from prison he was again committed for about nine months. In June 1931, he was arrested for another crime, found insane by a jury and committed to the Norwalk State Hospital in California. He remained there only about a month and a half and then came to Illinois. He testified that he committed the crime of armed robbery in Galesburg and was sentenced to prison for that crime in November, 1931.

The record shows that he was received at the penitentiary November 24, 1931, and that in September, 1932, he was transferred

to the Asylum for Insane Criminals upon due certificate of insanity which recited that he was undoubtedly insane when convicted. In November, 1943, he was transferred back to the penitentiary on order of the Department of Public Safety, reciting the recommendation of the Classification Board under the general direction of the State Criminologist and pursuant to the power vested in the Department of Public Safety. In September, 1944, he was paroled. In November he was arrested for armed robbery. On trial in January 1945, he first pleaded not guilty, but after the introduction of much of the State's evidence, he decided to change his plea, whereupon his counsel told the court of the change, the jury was discharged, and the court heard him.

Appellant's contention is that instead of the lengthy hearing by the court, it should have impaneled a jury to determine the question of his sanity, and that as soon as the court was put on notice of his adjudication of insanity, it was without jurisdiction over his person until a determination of such a jury that he was sane. The attack in this habeas corpus proceeding is directed principally to the conviction in 1945 where the question was raised, after plea and discharge of the jury, but before sentence. Appellant does not, however, concede the validity of the 1931 conviction.

The District Court denied a motion to dismiss the application for habeas corpus and held a full hearing on the merits of the petition. There was introduced in evidence the complete transcript of the hearing in mitigation after plea of guilty in the Cook County Court, and the court also heard the evidence of appellant himself, the attorney who represented him on the trial, a police officer, an F.B.I. agent, an attorney for the Veteran's Administration, and the attorney who prosecuted appellant in the 1945 trial. From all of this evidence, the court concluded that appellant was sane, and that if he ever had been insane, he certainly had lucid intervals. He inferred from the evidence that appellant had tried to get a not guilty verdict in the case, but that when the overwhelming character of the State's evidence became apparent to him and his counsel, he changed his plea to guilty, and not until after that plea did he bring forward the fact that he had been adjudged insane some fourteen years earlier.

Appellant contends that the question of his sanity at the time of the habeas corpus hearing was not in issue, but that the sole question was whether appellant who had been adjudged insane by a court of competent jurisdiction in 1931, could enter a plea of guilty to an indictment charging him with a crime until the issue of whether he was restored to sanity or continued insane was determined in some manner prescribed by Illinois statutes; that at common law, until the adjudication of insanity had been superseded by a judicial finding that the accused had been restored to sanity he was without legal capacity to plead to the indictment, and the court without jurisdiction to accept a plea of guilty and sentence him on such plea, hence the sentence of the court was void and the detention thereunder violates due process under the Fourteenth Amendment. Again, he states, "(Appellant's) status, when he appeared in the Criminal Court of Cook County, was that of an insane person and by common law, which has never been abrogated by statute, he was under a legal disability, which prevented him from pleading to the indictment. When the Judge * * * was put on notice of Petitioner's disability by reason of mental incompetence, he was without power to assume jurisdiction over the person of the Petitioner until the issue of the Petitioner's sanity had been determined by a jury impaneled to try same." He contends that the California adjudication is entitled to full faith and credit until superseded by decree of a court of competent jurisdiction.

We cannot agree with appellant as to the binding and conclusive effect of an adjudication of insanity. We have found no case, even at common law, holding that an adjudication of insanity in some other court, at some earlier time, could be set up by collateral proceeding where the earlier adjudication was not even called to the attention of the court. Nor do we find any case where such a prior adjudication was relied upon as conclusive proof of insanity either as of the time of the commission of the

crime or of the trial thereof. In fact, the rule appears to be that a prior adjudication is only prima facie, and not conclusive evidence of criminal irresponsibility. See 7 A. L.R. Annotation, 568; 68 A.L.R. Annotation, 1310.

Illinois has, by statute, provided adequate means for safeguarding the rights of insane persons charged with crime. The portion of the statute here applicable provides:

"An insane person, without lucid intervals, shall not be found guilty of any crime or misdemeanor with which he may be charged: Provided, the act so charged as criminal shall have been committed in the condition of insanity. If, upon the trial of a person charged with crime, it shall appear from the evidence that the act was committed as charged, but that, at the time of committing the same, the person so charged was insane, the jury shall so find by their verdict, and by their verdict shall further find whether such person has or has not entirely and permanently recovered from such insanity; and in case the jury shall find such person has not entirely and permanently recovered from such insanity, the court shall commit such person to the Department of Public Welfare. * * *" Smith-Hurd Ann. St. Ch. 38, section 592.

This means that the sanity or insanity of a person charged with the commission of a crime shall be determined by a jury in the court where the cause is pending. People v. Howe, 375 Ill. 130, 30 N.E. 2d 733. Illinois courts have uniformly held that the duty and responsibility of raising the question rests upon the accused and his counsel. People v. Haupris, 396 Ill. 208, 71 N.E.2d 68; People v. Wagner, 390 Ill. 384, 61 N.E.2d 354; People v. Hart, 333 Ill. 169, 164 N.E. 156. This follows from the fact, stated in People v. Bacon, 293 Ill. 210, 127 N.E. 386, 388, that "It has long been the law in this State that every man is presumed to be sane until the contrary is shown. In order to entitle the accused to an acquittal on the ground of insanity, this legal presumption must be overcome by evidence tending to prove insanity which is sufficient to raise a reasonable doubt of the sanity of the accused at the time of the commission of the act for which he is sought to be held accountable." The courts have also indicated that to rely on prior adjudication, it must be shown that the insanity was of a permanent or continuing type. People v. Varecha, 353 Ill. 52, 186 N.E. 607. People v. Maynard, 347 Ill. 422, 179 N.E. 833, 836. In the latter case the Illinois court said, "Whether the presumption arising out of an adjudication of insanity * * * has been overcome was a question of fact requiring evidence."

From all of this it follows that, even though the conviction and sentence of appellant in 1931 did occur within a few months after his adjudication of insanity by a California court, that fact may not be availed of by collateral attack on the judgment.[1] Accordingly, it cannot be held in this proceeding that appellant was not properly in the custody of appellee under the 1931 sentence, and it is therefore unnecessary for us to consider the somewhat different questions presented by the attack on the 1945 judgment and sentence. Further, under the circumstances of this case, and in the light of the cases of White v. Ragen, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348, and Marino v. Ragen, 332 U.S. 561, 68 S.Ct. 240, we have preferred to rest our decision on this ground rather than examine into the vexed question of whether or not appellant's various applications for relief in the state courts exhausted his state remedies therein.

We are indebted to counsel appearing in appellant's behalf on appointment by the District Court and this court for a very able and conscientious presentation of the difficult issues involved in this case.

Judgment affirmed.

---

[1] Cf. Srygley v. Sanford, 5 Cir., 148 F. 2d 264; Byrd v. Pescor, D.C., 68 F.Supp. 889, and cases there cited for a criticism of the use of habeas corpus to raise the issue of insanity.