## People of State of Illinois, Defendant in Error, v. O. F. Leiby, Plaintiff in Error.

### Gen. No. 10,561.

Opinion filed May 2, 1952. Released for publication May 22, 1952.

GEORGE H. SCHIRMER, JR., of Freeport, for plaintiff in error.

RAMER B. HOLTAN, Assistant State's Attorney of Stephenson County, of Freeport, for defendant in error.

MR. JUSTICE ANDERSON delivered the opinion of the court.

The State's Attorney of Stephenson county, Illinois, filed an information in the county court charging O. F.

Leiby, plaintiff in error, hereinafter referred to as the defendant, with a third offense of operating a motor vehicle while under the influence of intoxicating liquor. On a plea of not guilty he was tried by a jury who found him guilty and fixed his punishment at ninety days imprisonment and a fine of $100. Motions for a new trial and in arrest of judgment were overruled by the trial court who then entered a judgment on the verdict. The defendant sued out a writ of error to this court. The defendant assigns as error only that the verdict of the jury was contrary to the weight of the evidence and that the People failed to prove the defendant guilty beyond a reasonable doubt.

It appears from the record that on December 3, 1950, about 2:00 a. m., the defendant was driving his motor vehicle east from Freeport, Illinois, on a state highway, when he was arrested for the above mentioned charge.

William Janssen, a Deputy Sheriff of Stephenson county, testified: that he saw the defendant's car go off the highway on the left shoulder; that he helped the defendant out of the car; that "he was kind of staggery, . . . his eyes were glassy and bloodshot, and I couldn't understand what he was talking about too much"; that he had intoxicating liquor on his breath; that he had conversation with the defendant about some pills he needed out of his car; and that he called Leiby's doctor about the pills.

Nels Thompson, another Deputy Sheriff, testified that he was with Janssen and also observed defendant's car going to the left side of the cement road; that the defendant "did not have much to say." He testified that the defendant had a liquor breath and that he was pale and glassy-eyed. He further testified that he thought Janssen understood the defendant because he wrote the answers that the defendant gave him in his report book. He further stated that he heard the defendant talking about pills and money in his purse.

He further testified that in his opinion the defendant was intoxicated.

The defendant was taken to the county jail. Police officers Karl Stroh and Melvin Bere were at the county jail when the defendant arrived and they both testified in substance that the defendant was pale and incoherent; that he was unsteady on his feet; that they smelled intoxicating liquor on his breath; and that he was under the influence of intoxicating liquor.

The defendant, Frank Leiby, testified that on the evening in question he had had nothing intoxicating to drink until about 11:00 p. m. About that time he had one bottle of beer. He further testified that prior to that time he had taken some pills from Dr. Buchanan for pain and sleep for his arthritis; that he did not drink any more because he was taking medicine; that some time after 11:00 o'clock he got into his car which would not start (it was zero outside); that he cranked his car and got the motor going and slept in the car, parked near the Parkview Tavern, until about 2:00 a. m. when he was awakened by the bartender from the tavern; that the police officer stopped him after he was on the state highway; that he got out of his car without assistance. On cross-examination defendant denied that he had purchased or drunk any hard liquor during the evening in question. Dr. Buchanan testified on behalf of the defendant and stated in substance that he was treating the defendant for arthritis and had prescribed phenobarbitol, amitol, and demurol; that the effect of these drugs would be conducive to relaxation or sleep if taken with a bottle of beer.

Lloyd Polhill, who saw the defendant about 11:00 p. m. in his restaurant and tavern testified that he, defendant, ate some food in said restaurant about that time and that he was of the opinion that he was not then under the influence of intoxicating liquor.

Richard Schoenhardt testified that he saw the defendant at the Parkview Restaurant about 11:30 p. m.

when he drank a bottle of beer; that he refused another bottle of beer and that he did not smell any intoxicating liquor on his breath.

Defendant's daughter, Lola Adams, and her husband, LeRoy Adams, both testified that they were with defendant until about 11:00 p. m. and that at that time he was not intoxicated.

Ellen Leiby testified that she lived with her father and was with him until 7:00 p. m., when he left the house, and that he had no intoxicating liquor up to that time.

The sole question presented here is whether the defendant was under the influence of intoxicating liquor at the time of his arrest and whether or not such intoxication was established by the People beyond a reasonable doubt.

The case of *Osborn v. Leuffgen,* 381 Ill. 295, involved a Dram Shop Case and the question presented was whether or not an assault made upon the decedent in the defendant's tavern, resulted from the intoxication of the assailant, a patron in the tavern. One of the questions involved in that case was whether the assailant, who had drunk some beer, was under the influence of intoxicating liquor. The Supreme Court says on page 298 of the opinion:

". . . Beer is an alcoholic liquor, and it is a matter of general knowledge that all alcoholic liquors are intoxicating in varying degrees. It is well known that the effect of alcohol upon all persons is not the same but may be widely different, and that an individual who has had only a slight amount to drink may in some instances be more dangerous than a person who shows signs of intoxication. The Supreme Court of Pennsylvania has said in the case of Elkin vs. Buschner, 16 Atl. 102: 'Whenever a man is under the influence of liquor so as not to be entirely himself, he is intoxicated. Although he can walk straight, attend to his business,

and may not give any outward and visible signs to the casual observer that he is drunk, yet if he is under the influence of liquor so as not to be himself, so as to be excited from it, and not to possess that clearness of intellect and control of himself that he otherwise would have, he is intoxicated.' "

In the instant case the testimony of the People's witnesses discloses that the defendant was under the influence of intoxicating liquor at the time of his arrest. Bearing in mind the definition of intoxication as stated in the *Osborn* case, it is evident that the jury was justified in finding that the defendant in the instant case was intoxicated at the time of his arrest. It is true that other witnesses for the defendant testified that he was not intoxicated about 11:30 p. m. However, this does not establish the fact that he was not intoxicated at 2:00 a. m. when he was arrested. Except for the defendant, all witnesses who saw him at 2:00 a. m. testified that he was at that time under the influence of intoxicating liquor. His doctor's testimony that he was taking drugs which were conducive to sleep does not militate against the other testimony that he had all the signs of being intoxicated at the time he was arrested. The effect of the drugs would not have made him bleary-eyed, incoherent, and "staggery" as evidenced by the testimony of several witnesses. The jury had an opportunity to see all the witnesses and determine their credibility. We can not say, which we must say in order to reverse this case, that the verdict was palpably against the weight of the evidence. (*People v. Howe,* 375 Ill. 130.) The defendant's guilt was established beyond a reasonable doubt.

Accordingly the judgment of the trial court should be and is affirmed.

*Judgment affirmed.*