THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT GALE, Defendant-Appellant.

(No. 70-124;

Third District—June 22, 1971.

John L. Barton, of Defender Project, of Ottawa, for appellant.

Bernard L. Oltman, State's Attorney, of Pekin, for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from the circuit court of Tazewell County.

Robert Dean Gale, hereinafter referred to as the defendant, was convicted after a trial by jury of the crime of aggravated battery and was sentenced to a term of imprisonment of not less than four nor more than five years.

The defendant and his wife, Berverly Gale, lived in Pekin, Illinois, with their seven children, whose ages range from eight to seventeen years. Their oldest son's fiance, Billie Jo Borton, was also a member of the household.

On the morning of October 16, 1969, the defendant and his wife drove to the business district of Pekin in order to pay some bills. The defendant suggested to his wife that she transact the business and he went to the Eagles Lodge arriving there at approximately 11:45 A.M. At approximately 2:00 P.M. Mrs. Gale called at the lodge in order to pick up the defendant for the return trip home. Upon her arrival he declined to

leave. Mrs. Gale then left to shop for groceries and returned to the lodge again at about 4:00 P.M. The defendant at this time was sitting at the bar and refused to leave. Mrs. Gale then returned home with the understanding that the defendant would call her when he was ready to go home and she would return to the lodge for him. At approximately 5:30 P.M. Mrs. Gale received a call from the defendant in which he indicated he was ready to come home. Mrs. Gale, along with an eight year old daughter, then drove to the lodge and upon their arrival found the defendant was playing pool and again he refused to leave. Finally, at some time after 7:00 P.M. the defendant, Mrs. Gale and their daughter did depart for home. The evidence strongly indicates that Mr. Gale drove the automobile and did not encounter any difficulties. Upon his arrival home he abused his thirteen year old son by pushing him against a kitchen cabinet. The defendant then took several drinks from a bottle of beer, after which he stumbled and fell to the floor. Being apprehensive of harm, no one in the family attempted to assist the defendant but instead Mrs. Gale and her children returned to the living room. After several efforts the defendant managed to stand, after which he entered a bedroom, from which he emerged carrying a 22 caliber rifle. Sitting in a chair 6 feet away and opposite from the couch where Mrs. Gale was sitting, the defendant commenced shooting bullets into the wall above his wife's head. Repeatedly loading the gun the defendant proceeded to shoot figurines which were located in a curio cabinet hanging above the couch upon which Mrs. Gale was sitting. Shattered glass fell upon Mrs. Gale, her son Raymond Gale and his fiance, all of whom were sitting on the couch. The defendant ignored the requests of his wife and children to cease shooting but instead threatened to shoot anyone who attempted to leave. Several times he had his son Bruce, age 15, procure more shells from another room and as the son would hand him a shell he would load the gun and continue to shoot into the wall directly above his wife's head. The defendant next ordered his son Bruce to get him a bottle of beer. When the son complied the defendant proceeded to pour the contents of the bottle over his wife's head. Next he threw the gun at her striking her on the forehead. After pouring another bottle of beer on her he commenced spitting at her and then swung the gun as a club striking her in the stomach. After kicking his wife's legs the defendant loaded the gun and asked his wife, "how would you like to have your hair parted?" He then shot two bullets which Mrs. Gale said she could feel going through her hair. At all times the defendant ordered his wife to hold her head up and watch him. His final shot struck his wife in the head. Bleeding, Mrs. Gale asked to leave the room but defendant would not permit her to do so. After considerable crying and begging by the

children Mrs. Gale was permitted to go into the bathroom where an attempt was made to stop the bleeding. Mrs. Gale then lost consciousness and her husband drove her to the hospital, where she was hospitalized for one week.

The defendant testified that he had consumed approximately eight beers while at the Eagles Lodge and had taken six pills from a prescription drug which was for the purpose of alleviating a painful back condition. The prescribing doctor testified that the drug was known as an A.P.C. compound and if taken along with alcoholic beverages would cause drowsiness but no other side effects. The defendant's testimony is that from 7:30 P.M. until approximately 10:30 P.M. or 11:00 P.M. he has no memory of any of the events that transpired in his home. He stated that his first recollection after 7:30 P.M. was when he heard his children screaming and he then realized he had a rifle in his hands and saw his wife across the room holding a towel to her head which had blood on it.

In the record there is evidence the defendant was quarrelsome at the Eagles Lodge when his wife refused to buy a beer for him. Later they quarreled over the unexplained presence of beer which was found in the family automobile.

The defendant on appeal contends (1) that the prosecution failed to prove that he was guilty beyond a reasonable doubt, (2) that the court failed to determine at the conclusion of the trial whether or not the defendant was able to perform the functions of competency based on the minimal requirements of competency for trial as required by statute, (3) that the court erred in failing to sustain defendant's objection to an inflammatory and prejudicial closing argument by the prosecution, and (4) that a new trial should have been granted when the jury was discharged before reaching a verdict and was not resworn again before delivering the verdict to the court.

■■ No citations are necessary to support the statement that it has long been an elementary and recognized rule in Illinois that it is the peculiar province of the jury to weigh the evidence and determine the facts, and a reviewing court will not reverse a judgment of conviction on the grounds of insufficient evidence unless there is a reasonable and well founded doubt of the guilt of the accused and the verdict is found to be palpably contrary to the weight of the evidence. To sustain a conviction of the crime of aggravated battery in Illinois the accused must intentionally or knowingly cause great bodily harm. (Ch. 38, par. 12—4, Ill. Rev. Stat.) In the case before us the defendant testified he was unable to remember or recall the crime in question. This raises the question of whether the defendant's intoxication was so extreme that it negated

the existence of a mental state where he intentionally or knowingly committed the acts resulting in bodily harm. The defendant's voluntary intoxication defense was an affirmative defense upon which the jury would pass. (See *People v. Bell*, 114 Ill.App.2d 194, 252 N.E.2d 380; *People v. Egner*, 95 Ill.App.2d 314, 237 N.E.2d 747.) Without reiterating in detail the acts of the defendant such as driving a vehicle, obeying traffic signs, making correct turns, loading a rifle, shooting with accuracy, and taking his wife to the hospital, we can only conclude that there was sufficient evidence to justify the jury in finding that the defendant was possessed of the particular *mens rea* which is a requirement in the commission of the crime of aggravated battery. We conclude that the defendant was proven guilty of the crime of aggravated battery beyond a reasonable doubt.

Prior to trial the defendant filed a petition for a determination of competency and appointment of a psychiatrist. The trial court granted the petition and appointed two psychiatrists to make a psychiatric examination of the defendant. Defendant's counsel requested that the competency hearing be held without a jury and persisted in his waiver of a jury trial when at a later date he was interrogated on this specific matter by the court. On August 8, 1970, the defendant appeared in court with his attorney for the purpose of a competency hearing. At this time defendant's counsel offered into evidence without objection on behalf of the State an exhibit, being a report from Dr. James S. Ward, superintendent of the George A. Zeller Zone Center at Peoria, Illinois, and the psychiatric report and examination by F. C. Alano, Jr., M.D., a psychiatrist also from Zeller Zone Clinic. The defendant's attorney informed the court that no further evidence was to be submitted and then stated to the court as follows:

"Court: There being no objection, Defendant's Exhibit No. 1 is admitted into evidence. Any other evidence that you wish to present, Mr. Hayes?

Mr. Hayes: No, your Honor, except I would like to refer the Court to the report of Dr. James S. Ward. On page 2 of the report, he indicates that Mr. Gale shows no signs of outstanding anxiety or depression and states his intelligence appears to be in the average range and with that information coupled with the prognosis and diagnosis of Dr. Alano on the last page of that report, he states the patient comprehends advice and is able to give advice, number 2, there is no reason for him not to face his charges and not participate in court proceedings. For that reason I feel that the attending psychiatrists in this report have indicated the Defendant is competent with the means of the law and therefore should stand trial on the

charges as returned by the Grand Jury in this County. That's all I have, your Honor."

■■■ Based upon the statements of counsel for the defendant and two psychiatric reports there was no question but what the defendant was competent to stand trial. The trial of the defendant did not reveal any new or additional data or facts which would in any way indicate the defendant's incompetency to stand trial. The defendant's testimony indicated that he had complete knowledge and awareness of events immediately prior to and subsequent to the crime with which he was charged. The defendant testified as to a lapse of memory concerning the actual facts of the crime itself and based this lapse of memory upon consumption of alcohol which resulted in drunkenness. The question of the defense of drunkenness as related to the required elements of intent or knowledge was a question to be determined by the jury. We can only conclude that the defendant was at all times competent to stand trial.

During his closing argument the State's Attorney made the following statement:

"But actually, you might look at it from the other point—of course Mr. Gale blacked out; of course he doesn't remember what he did because he knows and Mr. Hayes knows that if he didn't black out and if he doesn't get up there and say 'I don't remember firing those shots,' he has no defense in this case."

These remarks were objected to by defense counsel and a motion was made for mistrial. The court denied the motion for a new trial and the defendant on appeal claims that the remarks were inflammatory, prejudicial, and that the court's failure to rule on the objection and the court's denial of a motion for mistrial constitutes reversible error. The defendant contends that the State's Attorney's remarks implied a manufactured defense of a "black out" and that the defense attorney was a party to perjury. In support of his contention defendant cites a number of cases, e.g., *People v. Freedman*, 4 Ill.2d 414, 123 N.E.2d 317. In the Freedman case the prosecution categorically accused the defendant of lying and further repeatedly referred to defense counsel as a clever lawyer who was attempting to free his client by trickery. (*People v. Savage*, 358 Ill. 518, 193 N.E. 470.) In the *Savage* case the prosecutor charged counsel with an attempt to free his client by trickery and made reference to a federal criminal conviction of the defendant for which there was apparently no basis. (*People v. Polenick*, 407 Ill. 337.) In the *Polenick* case the prosecutor referred to the defendant's defense as concocted and that it was necessary to go to great lengths to protect people against the wiles and cunning of defense lawyers and also that the defendant shouldn't be permitted to tell others that he had a lawyer who had hoodwinked

the jury into saving his life. Also in the *Polenick* case were present certain statements made by the prosecution which the Supreme Court interpreted as being highly prejudicial since they were misleading the jury as to who would be liable should a death sentence be imposed. (*People v. Mwathery*, 103 Ill.App. 114, 243 N.E.2d 429.) In the *Mwathery* case the prosecution made the charge that it is not unusual for the Public Defender to reasonably expect to share in the proceeds of any thing other than his salary as compensation for his services in representing an indigent defendant. There was evidence in the Mwathery case regarding insurance money which would be available.

■■■ After analyzing and comparing the remarks made in the cases cited by defendant with the remarks made by the State's Attorney in the case before us we fail to find a similarity. In the cases cited by the defendant the terms cunning, trickery, wiles, lying, clever, concocted and hoodwinked were used. In the instant case none of these terms were used, nor were any remarks made that would connote lying, cheating, falsity, perjury or other conduct that would influence, prejudice, or even tend to influence or prejudice the minds of the jury. A state's attorney "is entitled to discuss the conduct of the accused and to draw legitimate inferences from the facts and circumstances proved." (*People v. Potts*, 403 Ill. 398, 86 N.E.2d 345; *People v. Sturch*, 389 Ill. 82, 58 N.E.2d 873; *People v. Howe*, 375 Ill. 130, 30 N.E.2d 733.) He is also entitled to present conclusions which he claims should be drawn from the evidence. (*People v. Potts, supra; People v. Payne*, 359 Ill. 246, 194 N.E. 539; *People v. Reed*, 333 Ill. 397, 164 N.E. 847.) Our examination of the remarks complained of indicates that they did not exceed the bounds set forth in the cases we have cited and we therefore see no merit in the defendant's contention that the trial court erred in its ruling.

After several hours of deliberation the trial court called the jurors back into the court room and the following proceedings ensued:

"10:53 P.M. Return of Jury—Defendant present, Mr. Hayes and Mr. Morris present.

Court: I wish to know which one of you is the foreman or forelady? Mr. Foreman? Mr. Foreman, I do not want to know anything about your deliberations or what your voting might be. I do want to know whether you believe the jury could arrive at a decision if it had more time to deliberate?

Foreman: I don't believe so tonight, sir.

Court: Did I hear you say you did not believe so?

Foreman: So far.

Court: I would like to ask generally whether any of you feel that a verdict may be reached if any more time now were given to deliberate? Do any of you so believe?

A Juror: No.

Court: Are there any of you who believe that a verdict might be reached if more time were given tonight to deliberate? (no response)

Mr. Foreman, it was your belief that a verdict could not be reached even if more time were given tonight to deliberate, is that correct?

Foreman: Yes, sir.

Court: In view of that opinion on the part evidently of all of you I will in this matter withdraw the jury and discharge you from any further consideration of this case and so as soon as—

Mr. Hayes: May we approach the bench, your Honor (Mr. Hayes and Mr. Morris approach the bench and confer with the court.)

Court: In order that there be no misunderstanding, what are you people's ideas on this matter? Mr. Foreman, you had, in response said something to the effect you did not believe so tonight, is that correct?

Foreman: Yes, sir.

Court: Might we know what you mean by that?

Foreman: Apparently we can't agree.

Court: And so that if you were to go back to the jury room now and deliberate further, do you believe you could agree if this extra time were given?

Foreman: Quite possible.

Court: Are there any others who so believe?

A Juror: Possible.

Court: If that is your feeling then I misunderstood it earlier and ask that you return to the jury room to deliberate further."

The above conversation took place at 10:53 P.M. and the final and unanimous guilty verdict of the jury was brought in at approximately 11:00 P.M.

It is defendant's contention that error was committed because the jury was discharged before reaching a verdict and was not resworn before delivering the verdict to the court which convicted the defendant. The most pertinent case cited by the defendant in support of his contention is *People v. DeStefano*, 64 Ill.App.2d 389, 212 N.E.2d 357, where the jury had agreed upon a verdict with regard to a first count that because of disagreement as to a second count informed the judge that the jury could not agree, whereupon the jury was discharged, and the jury left the box and returned to the jury room and engaged in a conversation with a bailiff and an Assistant State's Attorney, were upon appeal it was

held that the court had in fact "lost control" of the jury and therefore subsequent receipt of a verdict by the court on the first count constituted reversible error.

■■ It is obvious that the pivotal question is whether the trial court did or did not lose control of the jury in the case before us. In *DeStefano* the jurors actually left the jury box, they mingled and conversed with a bailiff and assistant State's Attorney. The protective shield which must surround a jury had been removed. Outsiders were permitted to visit and talk with them and one of the outsiders was an individual directly interested in the trial of the case as a prosecutor. It is an elementary rule in our system of justice that a jury is to be isolated and shielded from outside contacts and influence and such rule was violated in the *DeStefano* case. Such was not the situation in the case before us for the jury did not leave the jury box, its members did not mingle or converse with outsiders. While it is true in the case before us that the trial court, laboring under a belief that the jury had not agreed upon any verdict as to the defendant, prematurely announced its intention to discharge the jury, nevertheless this error was discovered before they had been permitted to leave the box and the court was therefore fully justified in rectifying the misunderstanding and receiving the verdict which the jury had unanimously agreed upon. It often happens due to the reluctance of jury members to speak out that such misunderstandings as existed in the case before us will arise and a trial court would be remiss in its duties if before it lost control of the jury it discovered the situation had developed and did not take steps to correct it.

The errors alleged by the defendant do not warrant a reversal and therefore the judgment of the circuit court of Tazewell County will be affirmed.

Judgment affirmed.

ALLOY, P. J., and STOUDER, J., concur.