Marilyn Felker, Administrator of the Estate of Frank S. Felker, Deceased, Plaintiff-Appellant, v. C. M. Bartelme, d/b/a Bartelme's Tavern, and Harold Feigenholtz, Trustee, Defendants-Appellees.

Gen. No. 53,379.

First District, Second Division.

April 21, 1970.

BURKE, J., dissenting.

 

James D. Griffith, of Chicago, for appellant.

Hurford, Feigenholtz and Busch, Gerrard and Gerrard, of Chicago (Michael A. Gerrard, Allen S. Gerrard, and Harold Feigenholtz, of counsel), for appellees.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

A suit was brought by Marilyn Felker, as administrator of the estate of her husband, Frank S. Felker, deceased. The suit grew out of a collision of an automobile driven by Warthen L. K. Hobbs and the Felker vehicle on February 8, 1963, at about 8:45 p. m. As a result of the collision Felker was killed, and his wife, as administrator of his estate, brought an action against Hobbs under the Wrongful Death Act, and against C. M. Bartelme, d/b/a Bartelme's Tavern, and Harold Feigenholtz, trustee, the fee owner of the tavern property, under the Dram Shop Act. At the close of plaintiff's case

the defendants' motion for a directed verdict was granted. This appeal questions the propriety of that action of the trial court.

The collision occurred near an unregulated "T" intersection at Dundee and Landwehr Roads in Cook County. Hobbs' westbound car was turning south when the Felker automobile, traveling east, struck it. Hobbs said he had been in the tavern about half an hour during which time he had purchased and consumed two shots of whisky and had shared a 12-ounce bottle of beer with his wife. According to Police Officer Arlie Page, Hobbs said he drank his wife's drink when she went into the washroom, but Hobbs denied having taken the drink and denied having told Officer Page he did.

Hobbs testified that the road on which the accident occurred was a two-lane road, with one lane going in each direction, and that it was dry on the evening in question. The speed limit on Dundee Road was 55 miles per hour. Hobbs testified that he put on his left turn signal as he approached Landwehr Road and "saw a car coming from the West, perhaps half a mile away. I was watching that car all the time until the collision. Two seconds before I got hit I saw a second car in the eastbound lane." This "second car" was Felker's which collided with Hobbs'.

Officer Page arrived at the scene of the accident within minutes. In his testimony he said, "Hobbs told me he turned into a driveway instead of Landwehr Road and that he saw no oncoming headlights when he started to turn." He also testified that Hobbs had told him he "believed" he had his left turn signal on as he approached Landwehr Road.

Another police officer, J. D. Mills, testified he had a conversation with Hobbs at the hospital the morning after the accident, at which time Hobbs had admitted that while at home he had half a pint of whisky and a

quart of beer, both of which he shared with his wife. The court informed the jury that that statement was binding only on the defendant who made it, and was not admissible against the tavern owner or operator. Later, the judge indicated he was not considering that testimony in his ruling on the motion for a directed verdict.

Kyle Simpson testified that he and his wife were traveling east on Dundee Road on the night in question and saw the collision. He stated: "Immediately before the collision an eastbound car passed us approximately 500 feet west of Landwehr Road. I was going about 30 miles per hour at that time. There was also a westbound car in the center of Dundee Road. The eastbound car was going at a very high excessive rate of speed. I did not notice any directional signals being given by the westbound car." Simpson later said he had told a police officer he had no idea how fast the car was traveling when it passed him; that before the eastbound (Felker) car reached the intersection at Landwehr it was back in the eastbound lane; and that the speed of the Felker car could have been "55 miles an hour and could have been 80 miles an hour. I would have no idea of what the speed of that car was . . . . The speed limit was 55 miles an hour. The speed of the Chevrolet [Felker car] could have been 53 miles an hour."

The question before this court is whether there existed an issue of fact which should have been submitted to the jury. In their brief the defendants assert: "No evidence was introduced with regard to the condition of sobriety of Warthen L. K. Hobbs at/or prior to the accident at 8:45 p. m. Mr. Hobbs was not asked on cross-examination about his condition nor was anyone else asked to testify who had observed it." We cannot agree that there was "no evidence" regarding the issue of Hobbs' sobriety at the time of the accident. There was evidence that he had consumed alcoholic beverages at

the tavern, but such testimony would not raise a jury question as to the issue of intoxication, since the single fact that one has drunk alcohol does not permit the conclusion that he was drunk.

█ We do not agree with the plaintiff when he says that Illinois cases have held that the mere drinking of alcohol raises a jury question as to intoxication. The plaintiff has cited Nystrom v. Bub, 36 Ill App2d 333, 184 NE2d 273; Osborn v. Leuffgen, 381 Ill 295, 45 NE 2d 622; Davis v. Oettle, 43 Ill App2d 149, 193 NE2d 111; and Matkins v. Fenorsky, 348 Ill App 125, 108 NE2d 373, as supporting the proposition that the issue of intoxication is made out simply by showing that the alleged intoxicant drank alcohol, but in fact, none of those cases stands for that proposition. In each of them there was evidence that the alleged intoxicant had drunk alcohol, plus evidence of unusual behavior, or opinion evidence that defendant was drunk. Under those circumstances a jury would be entitled to conclude that the defendant was drunk.

In Fenorsky the defendant said he had felt "groggy" after leaving the tavern; he moved slowly and felt heavy, conditions he had not experienced before drinking. In Oettle the court noted at page 151: "A number of witnesses testified that immediately following the accident they observed Frank Emery and he was apparently intoxicated. These witnesses included a Doctor who treated Emery for his injuries at the hospital. There was no evidence to the effect that Emery was not intoxicated." In Leuffgen the alleged intoxicant had been sitting at a bar for some time with glasses and bottles in front of him; the bartender was partially intoxicated; and two games of dice broke up with angry quarreling followed by the alleged intoxicant's vicious assault on the decedent. The court found these facts as circumstances tending to prove intoxication.

In *Bub* a witness to the accident testified as to the condition of the alleged intoxicant by saying: "... I have an opinion as to whether he was intoxicated or not. My opinion is I think he was drinking quite heavily and was drunk." (At page 341.) A registered nurse who appeared at the scene of the accident expressed the opinion that the defendant was intoxicated. These statements, together with the proof that the defendant had consumed some alcoholic beverages prior to the accident were considered sufficient to warrant a finding that the defendant was intoxicated at the time of the accident.

■ There are at least two elements involved in a dramshop action as to proof of intoxication; one must show that the alleged intoxicant consumed alcohol, and must present independent evidence showing that he was, in fact, intoxicated. It is not sufficient, as plaintiff suggests, to simply introduce evidence that the defendant consumed alcohol. A jury verdict under such circumstances would be based on pure conjecture since each individual's capacity for alcoholic intake varies; therefore, a jury question as to intoxication is not made out by merely proving that one had consumed alcohol.

■ Upon reviewing the record in the case before us we have found independent evidence tending to support the allegation that the defendant, Hobbs, was intoxicated at the time of the occurrence, and we feel there was sufficient evidence presented to justify giving the case to the jury. First, there was testimony that the defendant had consumed alcohol at the dramshop, and although there is dispute as to exactly how much he drank there, it is undisputed that he did consume alcohol at the tavern. Then, there is a contradiction as to whether or not Hobbs had his directional signal on as he attempted to turn left off Dundee Road. There is a further contradiction between Hobbs' testimony that he saw a car approaching half a mile away, and the testimony of Officer

48

Page that Hobbs had told him he had not seen any oncoming headlights. Hobbs had mistakenly turned into a driveway, thinking it was Landwehr Road, although, by his own admission, he had made that turn at least fifty times before. There was testimony that the Felker car had passed another one, but was back in the proper lane at the time of the collision.

With this set of circumstances before us we cannot agree with the defendants that there was "no evidence" regarding Hobbs' sobriety prior to the accident. The trial court's ruling was to the effect that a verdict for the plaintiff based upon the evidence presented would not have been allowed to stand. Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504. For the reasons stated above, we do not reach such a conclusion, and therefore hold that the trial court committed reversible error in directing a verdict for the defendants.

■■ Since the case is being remanded we must discuss the issue as to whether Hobbs' alleged admission to Officer Mills concerning his consumption of whisky and beer at home was admissible against the dramshop owner and operator. The trial court had ruled that that statement was admissible only against Hobbs and not against the owner or operator. It would appear that the trial court's ruling was based on a well established principle. The admission of a codefendant is inadmissible as against others, absent proof that the person making the admission and the codefendant had been parties to a preconceived plan or conspiracy to which the admission was relevant. When the admission is made out of the presence of and without the consent of the coparty it is inadmissible against such coparty unless there is a showing that some form of agency relationship existed between the parties. The plaintiff sought to have the officer's version of Hobbs' admission presented to the jury in support of her contention that Hobbs was in-

toxicated at the time of the accident, and that it should be considered not only against Hobbs but against the persons interested in the ownership of the dramshop.

It would appear that Hobbs' admission was admissible against himself because it fell within an exception to the general rule regarding hearsay declarations. It was admissible because it was the purported statement of Hobbs himself and because it was against his interest to have made the statement since it contained inculpatory aspects. The question is one of reliability of the offered assertion. The "admission against interest" exception is based on the notion that one does not admit to facts which are against his own interest, and if he does admit them it would be fair to presume that the statement is true. Since the statement with which we are concerned falls within this category, it properly should have been admitted against Hobbs, but not against any other party absent the above required showing regarding agency. We hold that the trial court properly ruled that the statement was admissible only as against Hobbs.

The statement was against Hobbs' interest, but was self-serving at the same time. The potential self-serving aspect could have been Hobbs' reason for fabricating his own state of intoxication, since he may have assumed the plaintiff would be more likely, for practical reasons, to seek relief from the dramshop rather than from himself. Of course, we do not know of any conversation Hobbs had in the meantime. The accident occurred at 8:45 p. m., and the alleged conversation took place at 1:00 a. m. the following morning.

We cannot agree that the objection made to the admissibility of the proffered testimony was a general objection and hence raised only the issue of whether the evidence was material and relevant. The following col-

loquy appears in the record as having occurred during the time the objection was raised:

| | |
|---|---|
| The Court: | "Was he conscious?" |
| The Witness: | "Yes, sir." |
| Mr. Feigenholtz: | "I object to any conversation—" |
| Mr. Griffith: | "Was there any—" |
| Mr. Feigenholtz: | "Just a minute, please." |
| The Court: | "It won't be binding on your clients, but—" |
| Mr. Feigenholtz: | "That is the basis of my objection, your Honor." |
| The Court: | "It would be binding upon the person with whom the conversation was had, subject to rebuttal." |
| Mr. Griffith: | "I will make my same objections to that ruling that I made yesterday." |
| The Court: | "What is your objection?" |
| Mr. Griffith: | "That this is admissible as to all defendants." |
| The Court: | "It can't be under the rules of evidence." |

■ We feel that the objection cannot fairly be called general. The trial court had said the conversation would not be binding as to Mr. Feigenholtz's clients (the tavern and Mr. Feigenholtz as trustee), at which point Mr. Feigenholtz indicated that such was the basis of his objection. Under the circumstances, we think the parties concerned clearly recognized that the hearsay problem was being discussed and that counsel's objection was that Hobbs' admissions were inadmissible against the dramshop defendants since the statement was hearsay as to them. The evidence was hearsay as to the dramshop defendants, and the trial court properly ruled it inadmissible as to those defendants other than Hobbs.

Since we have concluded that the case should have been submitted to a jury for its determination as to whether Hobbs was intoxicated at the time of the accident, the judgment of the Circuit Court of Cook County is reversed and the cause remanded for a new trial.

Reversed and remanded.

LYONS, J., concurs.

BURKE, J., dissents.
In my opinion there was no evidence of intoxication. Therefore, the judgment should be affirmed.