NORMA PORTER REESE *et al.*, Plaintiffs-Appellees, *v.* WALTER A. ROTH, SR., *et al.*, Indiv. and d/b/a Pastime Inn, Defendants-Appellants.

Second District   No. 76-447

Opinion filed August 14, 1978.

John J. Nelligan, of Wheaton, for appellants.

Dowling & Safanda, of St. Charles, for appellees.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

This suit, brought under the Dramshop Act (Ill. Rev. Stat. 1975, ch. 43, par. 135), resulted from the collision of two automobiles, a Karmann Ghia driven by Roland Porter and a Pinto driven by Edward Bedal. Both

Porter and Bedal died as a result of the collision, and Brent Beebe, a passenger in Bedal's Pinto, was seriously injured. A consolidated action seeking recovery for loss of support was brought by Norma Porter Reese on her own behalf, on behalf of the estate of her son, Roland Porter, and on behalf of the next of kin of Roland Porter; Kenneth Bedal, on his own behalf, on behalf of the estate of his son, Edward Bedal, and on behalf of the mother of Edward Bedal, Patricia Martinez; Sarah and Sonja Beebe, wife and daughter of Brent Beebe; and Brent Beebe (hereafter collectively referred to as the plaintiffs), against Walter and Dorothy Roth, Sr., owners of the Pastime Inn. Following the trial, the jury found in favor of each plaintiff and against defendants and assessed damages. Defendants appeal.

Defendants contend that the trial court erred in denying defendants' motion for a directed verdict at the close of all the evidence and in denying defendants' motion for judgment notwithstanding the verdict, since there is no proof that intoxication was the cause of the collision. We agree and reverse.

Edward Bedal and Brent Beebe arrived at the Pastime Inn between 12:30 a.m. and 1 a.m. on September 1, 1974. They had spent a portion of the afternoon and the evening together, engaged in various activities in St. Charles and later at Five Islands Park. During the course of these activities they each consumed four bottles of beer. Brent Beebe testified that at the Pastime Inn they each drank two bottles of beer; they purchased two six-packs of beer which were placed in the rear seat of Bedal's Pinto. The pair then left the Pastime Inn around 1 a.m. with Bedal driving and, according to Beebe, headed west on Route 72.

The speed limit was 55 m.p.h. Beebe testified that Bedal reached and maintained a speed of 50 m.p.h. According to Beebe, Bedal did not seem to be in control of the vehicle; he was weaving the vehicle, though within his own lane; Bedal appeared to be "pretty high" but not totally "out of it." Beebe observed Bedal reach into the back seat of the Pinto and remove and drink three cans of beer; he also observed him swerve to avoid another car. About three miles west of the Pastime Inn Beebe fell asleep. He recalled at one point saying to Bedal, "You f___ up" but he had no recollection of the collision. He regained consciousness in the hospital.

We can only assume from subsequent events that the pair traveled on Route 72 until it turned into Route 20 and then continued on Route 20. Michael Babb, a Kane County deputy sheriff at the time, testified that he was called to investigate a collision on Route 20 at Allen Road. Upon arriving at the scene he found Bedal's Pinto in the northbound lane, pointed in a northwesterly direction towards Woodstock; looking south, Porter's Karmann Ghia was on the right shoulder of the road and pointed

southeasterly. He attempted to determine the point of impact but was unable to do so as the impact of the collision had moved both vehicles. Babb discovered some gouges in the southbound lane, which curves and goes east; however, he admitted that the gouges could have been placed there prior to or subsequent to the collision here. At the scene Babb was unable to make a determination as to which of the two vehicles was heading in which direction; later that morning, from identification taken from the victims, he learned that Bedal was from St. Charles and Porter was from Woodstock. He assumed from that that the Pinto was headed south towards St. Charles.

■■ Under the Dramshop Act, two causes of action are given: One, for an injury resulting from the direct affirmative act of an intoxicated person, a "by" cause of action, and the other, for an injury resulting in consequence of the intoxication. (*Hernandez v. Diaz* (1964), 31 Ill. 2d 393, 397, 202 N.E.2d 9, 12.) Although defendants have labeled the present action a "by" cause of action, in the complaint here, plaintiffs allege that the injury to their means of support occurred in consequence of the intoxication of said Edward Bedal. In an "inconsequence" case it is incumbent upon the plaintiff to prove that intoxication was the proximate cause of the injury (*Cope v. Gepford* (1945), 326 Ill. App. 171, 61 N.E.2d 394); in either case, there must be shown a chain of causal connection. *St. Clair v. Douvas* (1959), 21 Ill. App. 2d 444, 158 N.E.2d 642.

It is plaintiffs' position that there is sufficient evidence to support the jury's verdict that Bedal, due to his intoxicated state, was driving in the wrong lane, thus causing the collision with the Porter vehicle. Plaintiffs rely on Beebe's testimony that, while driving, Bedal was weaving all over his lane and especially his remark to Bedal, "You f___ up." Plaintiffs argue that Beebe's remark is given powerful meaning by the photographs of the collision site admitted into evidence, which showed the gouge marks in the lane in which plaintiffs assume Porter's vehicle was traveling and the oil spills on the road. On that basis, the jury could properly find that Bedal was traveling in the wrong lane, according to plaintiffs. Further, that Bedal's Pinto was found pointing north and Porter's Karmann Ghia facing south is more circumstantial evidence that Bedal was traveling north in the wrong lane at the time of the collision. There was also testimony that Bedal and Beebe were headed for Wisconsin from the Pastime Inn, and that Porter worked at the Shady Lane Theater in Marengo (north) and maintained an apartment in South Elgin (south).

Close examination of the evidence and the trial testimony reveals several flaws in plaintiffs' argument. While Beebe did testify that he remarked to Bedal, "You f___ up" he did not testify that he made the remark at the time of or immediately before the collision with Porter's car. It was the testimony of Deputy Sheriff Babb that the gouge marks

discovered on the roadway could have been there before or could have been made after the collision and could have been caused by something other than the impact of a collision. Nor was there any indication as to which of the two vehicles the oil, which was spilled all over the road, came from.

Plaintiffs' conclusion that Bedal was headed north and Porter was headed south is solely based on circumstantial evidence which itself was subject to conflicting testimony. Bedal and Beebe were both from St. Charles; while the bartender testified that Bedal and Beebe told her they were on their way to Wisconsin, Beebe himself testified that they were not going to Wisconsin. There was testimony that at some time that evening prior to the collision Porter had telephoned his mother from the Shady Lane Playhouse where he worked; while evidence was introduced that he maintained an apartment in South Elgin, his income tax returns and the address given his employer was that of his mother in Woodstock.

■■ Assuming, however, that the circumstantial evidence did establish which lane each vehicle was traveling in there is still no evidence as to how or why, or where the collision took place. There were no eye witnesses to the crash other than Bedal and Porter who were killed and Beebe who was asleep at the time of the collision. Given the circumstantial evidence here, any determination on the part of the jury as to the cause of the collision, the position of the vehicles, and the events just before the impact would be pure speculation and conjecture on the part of the jury. *Champion v. Knasiak* (1974), 25 Ill. App. 3d 192, 323 N.E.2d 62.

■■ We therefore hold that there was insufficient evidence from which the jury could conclude that the collision between the Porter vehicle and the Bedal vehicle was due to the intoxication of Edward Bedal. Deciding this case as we do, it is unnecessary to discuss the other contentions raised by the defendants.

The judgment of the circuit court of Kane County is therefore reversed.

Reversed.

SEIDENFELD, P. J., and BOYLE, J., concur.