RICHARD HAGOPIAN, Plaintiff-Appellee, *v.* FIRST VENTURE, LTD., *et al.*,
Defendants-Appellants.

First District (5th Division)    No. 79-2435

Opinion filed November 21, 1980.

William T. Rodeghier, of Chicago, for appellants.

Wexler, Wexler & Heller, Ltd., of Chicago, for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal by defendant First Venture, Ltd., and by individual defendants Nicholas Vranas, Dominic Saviano and Michael Kobyiak, who were employed as doormen by First Venture, from a judgment entered on a jury's award of damages to plaintiff because of personal injuries allegedly suffered as a result of the negligent and wilful and wanton conduct of defendants. The issues presented on appeal are (1) whether the trial court should have instructed the jury on the issue of plaintiff's intoxication and (2) whether the verdicts were so inconsistent that the trial court could not properly enter judgments thereon.

The record discloses that plaintiff with his sister-in-law, Carolyn

Hagopian, and two friends had attended a party where he consumed two drinks within a 2-hour period, after which they went to a Chicago night club operated by First Venture, arriving between 1 and 1:30 a.m. Plaintiff consumed two more drinks there, and he and the others were described by Mrs. Hagopian as being "high" and "feeling good" although she did not consider them to be intoxicated. It appears that after about two hours she and plaintiff stepped outside the club for some fresh air, and the record indicates substantial disparity as to subsequent events. Plaintiff testified that as he reentered the club with his sister-in-law, the individual defendants apprehended him, dragged him upstairs from the club, punched him repeatedly, and then left him outside; and that police arrived shortly thereafter and transported plaintiff to the hospital. He denied feeling "high" at the time.

Mrs. Hagopian said that as she was reentering the club, she turned to see if plaintiff was following her and saw that the club's doormen were dragging him up the stairs and beating him; that she ran for help, but the incident was over by the time she and her friends got outside, and at that time she observed that plaintiff was bleeding from the head and face. On cross-examination, she said that plaintiff was not intoxicated or behaving improperly and described his condition as merely "feeling good."

Glenn Solbrig, who was a member of plaintiff's immediate party on the night in question, testified that plaintiff was not intoxicated or acting unusual at the time, nor had they provoked or participated in any altercation at the club that night.

Defendant Vranas testified that plaintiff was in a hurry when he attempted to reenter the club but that Vranas and another doorman blocked the doorway. Plaintiff tried to push through them, so other doormen were called and plaintiff was escorted out.

Defendant Kobyiak testified that he was aware of an incident on the night in question in which someone was taken out of the club but that he did not follow the doormen up the stairs to see what occurred. Kobyiak also acknowledged statements in his deposition that when Vranas and Saviano escorted plaintiff from the club he was kicking and "causing a scene." Kobyiak stated, however, that he could not recall the contents of that deposition.

Defendant Saviano testified that he was at the entrance of the club at the time of the incident but was unaware of any disruption involving plaintiff that night; that he did not help escort anyone from the club; that he did not see any altercation outside and did not hear anyone shout that plaintiff should be stopped.

John Durkin, a police officer, testified that he talked to plaintiff several times during his investigation of the incident; that on one occasion plaintiff said "he did in fact try to push his way back into the lounge, and

that he had been drinking that night, and was intoxicated". Durkin admitted, however, that his police report made no mention of plaintiff's intoxication.

Eugene Hornowski, who was stationed at the entrance with Saviano that night, testified that when plaintiff ran past him, he shouted to have plaintiff stopped; that defendant Vranas and another doorman, Thomas Protz, then escorted plaintiff from the club; that while plaintiff was standing outside, one Eric Botcher, who was not an employee of First Venture and who was deceased at the time of trial, approached plaintiff, told him to shut up and struck him in the face; and that plaintiff was swearing, carrying on in a loud manner and threatening people outside the club.

Thomas Protz testified that he observed plaintiff arguing with a girl who then walked back into the club and plaintiff, after hesitating briefly, bolted through the club entrance; that when plaintiff was being escorted out, he was hysterical, screamed obscenities, and resisted by kicking and pushing. Protz also stated that Eric Botcher struck plaintiff.

Among the jury instructions tendered by defendant was the following pertaining to intoxication as evidence of contributory negligence and contributory wilful and wanton conduct:

> "Whether or not a person involved in the occurrence was intoxicated at the time is a proper question for the jury to consider together with other facts and circumstances in evidence in determining whether or not he was contributorily negligent. Intoxication is no excuse for failure to act as a reasonably careful person would act. An intoxicated person is held to the same standard of care as a sober person."

The trial court sustained plaintiff's objection to that instruction on the ground that there was no evidence of plaintiff's intoxication.

Four forms of verdict were submitted to the jury which returned two. One found "in favor of the plaintiff and against the defendants" and assessed compensatory and punitive damages. The second found for plaintiff "and against the following defendants, First Venture, Limited" and assessed the same amounts of damages. This appeal is from the judgments entered on those verdicts.

OPINION

Defendants contend essentially that the jury should have been instructed on the issue of plaintiff's intoxication, as a main component of defendants' theory was that any injury plaintiff may have sustained was due to his contributory negligence and contributory wilful and wanton conduct. Defendants assert, in addition, that the jury's finding against all defendants in one verdict and against only First Venture in the second

verdict was so inconsistent that the trial court could not properly have entered judgment. Plaintiff maintains, however, that defendants failed to present sufficient proof of plaintiff's intoxication so as to require an instruction on that issue and that judgment was properly entered on the verdicts, since the mere inconsistency of the verdicts did not obscure the jury's intention to find defendants guilty. For the reasons stated below, we conclude that the jury should have been instructed on the issue of plaintiff's intoxication.

■■ It is well established that where the record includes some evidence to support the theory set out in the instruction, the court is required to give that instruction. (*Figarelli v. Ihde* (1976), 39 Ill. App. 3d 1023, 351 N.E.2d 624; *Biggerstaff v. New York, Chicago & St. Louis R.R. Co.* (1957), 13 Ill. App. 2d 85, 141 N.E.2d 72.) In order to justify a jury instruction on the issue of intoxication, which in the present case is the basis of defendants' theory, the record must contain evidence that the allegedly intoxicated individual consumed alcohol and behaved unusually or inappropriately (*Felker v. Bartelme* (1970), 124 Ill. App. 2d 43, 260 N.E.2d 74), or that there is opinion evidence of such individual's intoxication (*McCullough v. McTavish* (1978), 62 Ill. App. 3d 1041, 379 N.E.2d 890; *Felker v. Bartelme*; also see *Davis v. Oettle* (1963), 43 Ill. App. 2d 149, 193 N.E.2d 111; *Nystrom v. Bub* (1962), 36 Ill. App. 2d 333, 184 N.E.2d 273). Evidence of alcohol consumption, unconfirmed by conduct or opinion evidence, is insufficient to permit the jury to consider the question of intoxication. (*Weeks v. Witek* (1975), 33 Ill. App. 3d 916, 339 N.E.2d 43; *Felker v. Bartelme*.) No specific quantity of alcohol need be consumed, however, because the effects of alcohol vary widely among individuals. As stated in *Osborn v. Leuffgen* (1942), 381 Ill. 295, 298-99, 45 N.E.2d 622, 624:

> "It is well known that the effect of alcohol upon all persons is not the same but may be widely different, and that an individual who has had only a slight amount to drink may in some instances be more dangerous than a person who shows signs of intoxication. The Supreme Court of Pennsylvania has said in the case of *Elkin v. Buschner*, 16 Atl. 102: 'Whenever a man is under the influence of liquor so as not to be entirely himself, he is intoxicated. Although he can walk straight, attend to his business, and may not give any outward and visible signs to the casual observer that he is drunk, yet if he is under the influence of liquor so as not to be himself, so as to be excited from it, and not to possess that clearness of intellect and control of himself that he would otherwise have, he is intoxicated.'"

The testimony presented in the case before us indicates that plaintiff consumed four drinks within four hours on the evening in question; that

Mrs. Hagopian believed him to be "high" and "feeling good," although not intoxicated; that plaintiff told Officer Durkin "he had been drinking that night and was intoxicated"; that plaintiff argued with a woman outside the club and tried to force his way back in; and that plaintiff was kicking, screaming obscenities, threatening passersby and "causing a scene" while being ejected. We believe that these circumstances would warrant a jury finding that plaintiff was intoxicated and therefore that the jury should have been instructed on the issue of intoxication. We do not imply, however, that a jury would be required to find plaintiff intoxicated, but rather that contrary inferences could have been drawn from the same set of facts, so that the jury should not, as a matter of law, have been foreclosed from that determination. *Weeks v. Witek.*

There is ample case law in which the test of consumption plus conduct was applied so as to create a question of fact on the issue of intoxication. In *Weeks v. Witek*, for example, plaintiff's assailant engaged in a heated argument after drinking six or seven bottles of beer, threw a bottle at plaintiff, beat and kicked him, and thereafter ran from the tavern. In *Felker v. Bartelme*, there was contradictory evidence whether the driver of an auto had the turn signal on before attempting to turn and whether or not that driver had seen an approaching auto which was in its proper lane. In addition, he had mistakenly turned into a driveway thinking it to be a road, although by his own admission he had turned onto that road at least 50 times previously. In *Matkins v. Fenorsky* (1952), 348 Ill. App. 125, 108 N.E.2d 373, a dramshop action, one Gaertner allegedly was sold liquor causing intoxication which resulted in injury to plaintiff. Gaertner testified to only three bottles of beer, but said that when he left the bar, he was "groggy" and "slow in moving" and "felt heavy all over" and that he did not feel that way before he had the beer. There was also testimony from the policemen that Gaertner appeared normal and did not smell of liquor. Similarly, in *People v. Leiby* (1952), 346 Ill. App. 550, 105 N.E.2d 776, witnesses testified that defendant had the smell of liquor on his breath; that his eyes were glassy and bloodshot; and that his speech was not coherent at the time of his arrest at 2 a.m. There was also testimony that he was not intoxicated at 11:30 p.m., but it was the court's view that this had no bearing on his condition at the time of his arrest, and there was also testimony of a doctor that the drugs prescribed for defendant were conducive to sleep. The court held that "did not militate against the other testimony" of intoxication. Finally, in *Osborn v. Leuff-gen*, a dramshop action, although the alleged intoxicant testified to only one or two bottles of beer, there was testimony that he had been sitting at a bar for some time with glasses and bottles in front of him; that the bartender was partially intoxicated; and that two dice games had been broken up with angry quarreling followed by the alleged intoxicant's

vicious assault on decedent, all of which, the court stated, tended to establish intoxication.

■■ In each of the foregoing cases there was evidence of alcohol consumption accompanied by unusual or inappropriate conduct on the part of the allegedly intoxicated person. Thus, in the case before us, the trial court's refusal to instruct the jury on the issue of plaintiff's alleged intoxication effectively denied defendants the opportunity to present that defense. (*Cf. Schneider v. Kirk* (1967), 83 Ill. App. 2d 170, 226 N.E.2d 655.) We hold, therefore, that the evidence here presented was sufficient to support the instruction as to plaintiff's intoxication and that the failure to do so was error requiring a new trial.

■■ In the light of our decision, it is unnecessary to determine whether or not the jury verdicts were so inconsistent as to render proper entry of judgment impossible. We note parenthetically, however, that jury verdicts are to be liberally construed (*Churchill v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 127, 383 N.E.2d 929), and that where the jury makes clear its intention in returning the verdict, "[i]f it is otherwise supportable the verdict will be molded into form and made to serve unless there is doubt as to its meaning" (*Manders v. Pulice* (1970), 44 Ill. 2d 511, 517, 256 N.E.2d 330; also see *Gille v. Winnebago County Housing Authority* (1970), 44 Ill. 2d 419, 255 N.E.2d 904). In the case at bar, it appears to us that the jury clearly intended to find all defendants guilty, as is manifest from the record taken as a whole. Although the jury may not have fully comprehended each prescription of the verdict forms, that fact does not diminish its intention.

Accordingly, we reverse the judgment appealed from and remand for a new trial.

Reversed and remanded.

LORENZ and WILSON, JJ., concur.