DONNA ROSE, as Mother and Next Friend of Melissa Moland *et al.*, Plaintiff-Appellant, *v.* BROZMAN'S TAVERN, INC., Defendant-Appellee.

Second District    No. 81-252

Opinion filed December 21, 1981.

John M. Lamont, of Thompson & Lamont, of Aurora, for appellant.

Raymond J. Conklin, of Klockau, McCarthy, Lousberg, Ellison & Rinden, of Rock Island, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

This is an appeal from the judgment of the circuit court of Kendall County directing a verdict for the defendant in a dramshop case.

The plaintiff, Donna Rose (formerly Donna Moland), brought this action under section 14 of the Dramshop Act (Ill. Rev. Stat. 1977, ch. 43, par. 135) on behalf of her three minor children, Melissa, Molly and Lynn Moland, for the death of their father, Rex Moland. Rex Moland was killed when an automobile being driven by Eddy Stumbo in which Moland was a passenger struck a bridge abutment and overturned.

The evidence adduced at trial showed that on September 2, 1978, Eddy Stumbo and his girl friend, together with another couple, had ridden to Rockdale on their motorcycles. A homecoming celebration was going on in Rockdale that day. Stumbo testified that he visited some of the street booths that had been erected for the celebration and played some games, then went into Brozman's Tavern and had a drink. He testified that during the afternoon on that day he had four or five drinks of vodka and grapefruit in Brozman's between approximately 1:30 and 4:30 p.m. He did not stay in the tavern all of the time but visited various booths, played some games and ate several corn dogs. Stumbo testified that he and his friends left the tavern between 4 and 4:30 p.m. because the other couple had to be at a wedding reception in Villa Park at 6 p.m. He and his girl friend then rode his motorcycle back to her house, a distance of several miles, and Stumbo remained there until 7:30 or 8 p.m. He testified that while he was at his girl friend's house he took a nap and had nothing to eat or drink. About 7:30 or 8 p.m. his friend, Rex Moland, came by and they left the girl friend's house and went to Stumbo's parents' house where Stumbo showered and changed clothes. They then left Stumbo's parents' house in Stumbo's car, with Stumbo driving, sometime between 8:30 and 9 o'clock and headed toward Yorkville. While enroute, near Grove Road approaching Au-Sable Creek, Stumbo's car failed to negotiate an "S" curve. The car left the pavement, collided with the Au-Sable Creek bridge and landed upright in the creek. While the speed limit on the highway at that point was 55 miles per hour there was a sign at the approach to the bridge warning motorists to slow down to 40 miles per hour. Moland was pinned in the wrecked car and was extricated from it only with some difficulty. He was pronounced dead on arrival at the hospital. Stumbo, although dazed, was conscious when helped from the car.

The deputy sheriff, Richard Herron, who responded to the call reporting the accident, testified that he received the call at 9:06 p.m. while on patrol in the Boulder Hill area of Kendall County. He testified the weather was clear and dry but it was dark when he arrived at the scene. When he arrived Moland was pinned in the car and apparently

unconscious but Stumbo was conscious. Herron testified that Stumbo was assisted out of the car and up the creek bank and upon getting up the bank he said to Herron "Rex is okay; we were talking just a minute ago; we've had too much to drink, he just passed out and he'll be okay." At this time, Herron testified, Stumbo had "lacerations or cuts around his head and face area, he had definite injuries you could see." This was the only testimony as to Stumbo's physical condition at the scene of the accident.

This remark testified to by Deputy Herron, that is, "we've had too much to drink, he just passed out and he'll be okay" as having been made by Stumbo at the scene of the accident, was objected to by defense counsel when plaintiff attempted to introduce it into the evidence. Defense counsel objected to this as he said it was hearsay but the trial court overruled the objection and allowed it in as a spontaneous utterance immediately following the accident. Stumbo did not recall making this remark in his testimony. These words, plus Stumbo's own admission that he had had four or five drinks during the afternoon at Brozman's Tavern, constituted the only evidence as to Stumbo's intoxication at the time the accident occurred.

We have some reservations as to whether this conversation was admissible as an exception to the hearsay rule on the ground of being a spontaneous utterance (that is, part of the *res gestae*). We cannot be certain of the time which elapsed between the accident and the alleged utterance, but it may have been as much as 20 or 30 minutes, since it occurred after the deputy sheriff had been called to the scene, had arrived and Stumbo had been helped out of the wrecked car and had gotten back up out of the creek bank and onto the highway. Thus, there was an interval of time between the accident and the remark in question. Moreover, the alleged remark may have been mere wishful thinking as to Moland's condition, rather than a spontaneous utterance explaining how the accident occurred. As was said in *Carroll v. Guffey* (1959), 20 Ill. App. 2d 470, 476:

> "If a declaration is made after the injury has been received and is merely a narrative of what has taken place, it cannot be considered part of the *res gestae.*"

In the instant case, the alleged remark of Stumbo tended to explain Moland's lack of consciousness rather than how the accident occurred. The statement "we've had too much to drink" is at a variance with the evidence, which did not indicate that Moland had had anything to drink before the accident, and there is no apparent reason for the use of the pronoun "we." Stumbo had testified that he had no drinks after about 4 or 4:30 p.m. at the defendant tavern. Any drinks he or Moland may have had elsewhere afterwards before the accident would have no bearing on this case. Moreover, this is contrary to the evidence inasmuch as no alcohol

was found in Moland's body at the hospital. The use of the word "we" would indicate drinking together, and since this would not have been at Brozman's Tavern it would have had no bearing on the defendant's liability even if considered as a spontaneous utterance. Thus, we are inclined to regard the trial court's ruling admitting this remark as part of the *res gestae* of the occurrence as erroneous but, in any event, we think it did not tend to prove liability on the part of the defendant tavern, since the joint drinking indicated by the pronoun "we" clearly did not occur in that tavern nor did it amount to an opinion that Stumbo was drunk at the time that he and Moland were injured or that he and Moland became drunk in Brozman's Tavern.

■■ This leaves the question whether the logical inference from the fact of the occurrence itself, that is the fact that Stumbo lost control of his car going around a curve—is in itself sufficient evidence of unusual or erratic behavior to raise the issue of intoxication and bar a directed verdict. We must judge the propriety of a directed verdict by the *Pedrick* rule (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494), that is, that verdicts should be directed "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (37 Ill. 2d 494, 510.) Judging by this standard we do not think the trial court abused its discretion in directing a verdict for the defendant, Brozman's Tavern, in this case.

We recognize that several recent Illinois cases have denied a motion for a directed verdict and allowed the issue of intoxication to go to the jury on the inference of intoxication raised by unusual, erratic or violent behavior of the allegedly intoxicated person, plus evidence that he had been drinking in the particular tavern. Thus, in *Hagopian v. First Venture, Ltd.* (1980), 90 Ill. App. 3d 951, the reviewing court reversed the trial court's refusal to give an instruction on the issue of intoxication where there was evidence that the plaintiff had had several drinks on the premises and that he acted in a boisterous and violent manner and that he was fighting, screaming, and kicking on the defendant's premises during an altercation with the tavern employees. The appellate court said that such behavior was in itself sufficient to raise the issue of intoxication.

In *Weeks v. Witek* (1975), 33 Ill. App. 3d 916, a patron of the tavern threw a beer bottle at the plaintiff after the patron had consumed six or seven bottles of beer while both were in the tavern. He then kicked and beat the plaintiff. While there was some evidence from which it could be surmised that the aggressor was jealous of the plaintiff because the plaintiff was talking to the aggressor's wife, the reviewing court held it was error to direct a verdict in the tavern's favor since the act of drinking

alcohol on the premises, together with the aggressor's violent behavior, raised at least a jury issue as to the question of the aggressor's intoxication.

In *Bohnen v. Wingereid* (1979), 80 Ill. App. 3d 232, the appellate court held there was sufficient evidence of intoxication to justify an instruction on that issue; however, in that case there was not only evidence of drinking soon before the accident but there was also evidence of erratic driving testified to by witnesses, the driver having passed over the center line of the highway just before the accident occurred.

Likewise, in *Weiner v. Trasatti* (1974), 19 Ill. App. 3d 240, and in *Felker v. Bartelme* (1970), 124 Ill. App. 2d 43, cases where the reviewing court reversed the trial court's direction of a verdict for the defendant, there was definite evidence of unusual or erratic behavior in addition to the consumption of alcohol not long before the incident resulting in the lawsuit. In *Weiner*, the driver plowed into the back of a properly parked truck, killing the plaintiff's wife, and in *Felker*, the allegedly intoxicated person was observed turning into a driveway instead of the street which he intended to turn into, although the intended intersection was familiar to him as he had driven this way many times.

Thus, in the cases where a directed verdict on the issue of intoxication has been reversed, there has been, in addition to the consumption of alcohol on the defendant's premises, either competent opinion evidence based on observation that the individual in question was intoxicated, or evidence of some erratic, unusual behavior by such person soon after consuming alcohol on defendant's premises. In the recent case of *Lang v. B.I.T., Inc.* (1981), 96 Ill. App. 3d 37, there was an accident involving a three-car collision. The evidence established that the alleged wrongdoer had been drinking in the defendant's tavern prior to the collision, but the court said that mere drinking, followed by a collision, is not in itself evidence of such erratic behavior as to justify raising the issue of the tavern's liability due to the patron's intoxication, since drinking by itself is not sufficient and there was no evidence that the patron acted in such an unusual manner as to cause the collision.

■■ We do not find from the mere fact of the accident that Stumbo was guilty of such erratic or unusual behavior that his acknowledgement of a limited amount of drinking some 4 to 4½ hours previously entitled the plaintiff to try the issue of his intoxication. Actually, we have no evidence before us of any erratic behavior on Stumbo's part. A miscalculation with regard to speed or braking could easily result in failure to negotiate an "S" curve by a sober person or by a person not inebriated to the extent of intoxication, even though he had previously consumed some alcohol.

Stumbo's testimony that he had had four or five drinks of vodka and grapefruit between 1:30 and 4 or 4:30, during which time he had also

played games at street booths and eaten several corn dogs; that he had left the vicinity of the tavern at approximately 4:30 and ridden his motorcycle several miles to his girl friend's house without mishap, that he had then slept two or three hours and thereafter gone to his parents' home and showered and changed clothes before setting out with Moland, and that he had nothing to eat or drink since leaving Brozman's Tavern, does not, on the basis of these facts alone, raise an issue as to Stumbo's intoxication at approximately 9 p.m. the same evening. Nor does the fact of the accident standing by itself amount to an inference of intoxication any more than it did in the *Lang* case cited above. In *Reese v. Roth* (1978), 62 Ill. App. 3d 937, a decision of this court, it was clearly established that the driver of one car and his companion had been drinking at the Pastime Inn before the accident, which involved a collision resulting in the death of both drivers. The mother of the nondrinking driver sued Pastime Inn under the Dramshop Act on the theory that evidence of drinking shortly before the accident, plus the fact that one of the cars was apparently in the wrong lane, was evidence that the drinking driver had been intoxicated at the time of the collision. There was, however, no clear evidence as to which car had been in the wrong lane. This court rejected the conclusion that the patron of Pastime Inn had been intoxicated and reversed the judgment against the tavern on the ground that there was insufficient evidence from which the jury could conclude that the collision was due to intoxication by the driver who had patronized the tavern. We think that in the instant case, likewise, the evidence that Stumbo was intoxicated at the time his car left the pavement and skidded into the bridge abutment was not sufficient to create a jury issue. A verdict on the basis of the known facts would necessarily have been based on conjecture rather than actual evidence. We therefore do not agree with the plaintiff's contention that the trial court abused its discretion in directing a verdict for the defendant tavern. This decision, of course, has no bearing on the judgment against Stumbo.

The judgment of the circuit court of Kendall County is affirmed.

HOPF and VAN DEUSEN, JJ., concur.