REBECCA MARIE REED, Adm'x of the Estate of John Alan Reed, Deceased, Plaintiff-Appellant, v. WILBUR WALLACE FLEMING, d/b/a Butler's Supper Club, Defendant and Third-Party Plaintiff-Appellee (Lyle Mahr *et al.*, Third-Party Defendants).

Third District   No. 3—84—0258

Opinion filed April 25, 1985.

STOUDER, J., dissenting.

William C. Davis, Jr., of Lewistown, for appellant.

Roger R. Clayton and Nicholas J. Bertschy, both of Heyl, Royster, Voelker & Allen, of Peoria, for appellee.

JUSTICE BARRY delivered the opinion of the court:

This suit was brought under the Liquor Control Act (Ill. Rev. Stat. 1981, ch. 43, par. 135) by Rebecca Marie Reed, widow of John 'Alan Reed. John was killed as a result of a one-car accident in Fulton County. A motion for summary judgment by defendant Wilbur Wallace Fleming was initially denied, but on reconsideration the motion was granted on the ground that plaintiff failed to produce any evidence that the accident was proximately caused by the deceased's intoxication. Plaintiff appeals. We reverse.

The relevant facts as they appear in the record on appeal are as follows: During the week of December 4-5, 1981, John Reed was working the third shift at Sherex Chemical Co. in Peoria County. On the morning of December 4, Reed returned home from his employment around 7 a.m., ate and went to bed. Around 3:30 p.m., his wife, Rebecca, awakened him before leaving for work and arranged for Reed to take the children to her mother's home for the night. Reed was scheduled to begin work again at 10:20 that evening. When Rebecca finished work around 10:30 p.m., she stopped at Cheri's tavern in Canton and learned that her husband had not gone to work as scheduled, but had been drinking with a friend. It appears that Reed had telephoned his supervisor at Sherex earlier in the evening to say that he was having car trouble and would be late for work. He then proceeded to several drinking establishments. Around midnight Rebecca left Cheri's tavern in search of her husband. She checked at several taverns before reaching Butler's Supper Club in Morton around 1

a.m. There she found Reed at the bar, drinking a beer. The two argued about Reed's failure to go to work on time. Reed said he was only two minutes from the plant gate and he planned to leave the tavern at "a quarter till 2:00" to be there at 2:20. Reed ordered two more beers for himself and Rebecca, and when she rejected hers, he proceeded to drink all three, including the one he already had. According to Rebecca, Reed had glassy eyes and slurred his words. He staggered when he got off the stool to buy cigarettes. He returned with the wrong brand. Rebecca was of the opinion that Reed was intoxicated. She was still angry with her husband when Reed ordered yet another beer for himself. Rebecca left Butler's at 1:45 a.m. At 4 a.m. of December 5, 1981, John Reed was found dead at the scene of a one-car accident about 15 miles from Butler's at a point where the highway forms a broad curve between Butler's and the Reeds' home. Reed's automobile was overturned in a ditch, and Reed's fatally injured body lay several feet away. Rebecca explained that the road was the same route Reed had traveled to and from work for the past five years.

Body fluid samples taken by the coroner indicated that Reed's blood alcohol content was .285%. The coroner also observed that the body exuded a strong odor of alcohol. No skid marks were noted on the highway to indicate the reason Reed's vehicle left the road. No eyewitnesses to the accident were discovered, and no details of the decedent's activities between 1:45 a.m. and 4 a.m. are available.

Plaintiff initiated her action against defendant Wilbur Wallace Fleming, doing business as Butler's Supper Club, in May of 1982, alleging loss of means of support for herself and her two children, Timothy and Cappi Kearns, caused in consequence of the intoxication of John Reed. Fleming filed a third-party complaint against several other dramshop proprietors who allegedly sold alcoholic beverages to the decedent during the evening of December 4 or early morning of December 5, 1981. The third-party complaint was dismissed on motion of the third-party defendants. The instant appeal raises no issues with respect to the third-party action. Our discussion, therefore, relates solely to the propriety of granting defendant Fleming's motion for summary judgment.

Defendant Fleming's theory in moving for summary judgment and on appeal is that, since there were no eyewitnesses who could attest to any erratic driving by the decedent, a jury verdict for the plaintiff could never be upheld because a conclusion that Reed's intoxication caused the accident would necessarily be based upon pure speculation. In other words, plaintiff's evidence would be insufficient as a matter

of law to prove the proximate causation element of the statutory cause of action.

Defendant relies primarily on two factually similar cases decided by the second district in which dramshop defendants successfully established their entitlement to directed verdicts. (*Reese v. Roth* (1978), 62 Ill. App. 3d 937, 379 N.E.2d 932; *Rose v. Brozman's Tavern, Inc.* (1981), 102 Ill. App. 3d 1087, 430 N.E.2d 282.) The trial court, on reconsideration of its denial of defendant's motion for summary judgment, relied on these decisions in ruling in defendant's favor as well. A third dramshop case, *Jackson v. Navik* (1976), 37 Ill. App. 3d 88, 346 N.E.2d 116, is urged by plaintiff as a factually analogous situation which should control our disposition. Without denying the existence of factual similarities between the instant case and those cited by defendant, we agree with plaintiff that the principles set forth therein fail to compel the same result when applied to the situation under consideration here. Before discussing these three cases, we will set forth a few of the principles underlying the granting or denial of summary judgment in this case.

Our analysis necessarily focuses upon whether the pleadings, affidavits and depositions of record pose any genuine issue of material fact. If they do not, the movant is entitled as a matter of law to judgment in his favor. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005; *Joiner v. Benton Community Bank* (1980), 82 Ill. 2d 40, 411 N.E.2d 229.) The harshness of this remedy has given rise to the corollary rule that if there exists any doubt as to the movant's right to summary judgment, that doubt must be resolved in favor of the nonmovant so that evidence may be presented to the trier of fact. (*Cato v. Thompson* (1980), 83 Ill. App. 3d 321, 403 N.E.2d 1239.) An order by the trial court granting summary judgment will be reversed on review if it is determined that a material question of fact exists.

■ The elements of the statutory tort cause of action as pleaded by plaintiff are established upon: (1) proof that the decedent was intoxicated at the time of his death; (2) proof that defendant sold intoxicating liquor to the decedent; (3) proof that the liquor contributed to the decedent's intoxication; (4) proof that intoxication was a proximate cause of the decedent's death; and (5) resultant injury to the plaintiff's means of support. As indicated above, the basis for the trial court's entry of summary judgment in this case was the plaintiff's failure to allege sufficient facts to support her allegation of proximate causation (element 4). The court's written opinion, however, specifically found sufficient evidence of intoxication (element 1). It is, therefore, our task to determine whether the pleadings, affidavits and

depositions filed in this case raise a genuine issue as to whether the decedent's intoxication was a proximate cause of the automobile accident in which he was killed.

Careful scrutiny of relevant precedent as cited by the parties on appeal discloses that summary judgment for the defendant should not have been granted in this case.

In *Reese v. Roth* (1978), 62 Ill. App. 3d 937, 379 N.E.2d 932, plaintiff's decedent, Reese, was killed when his automobile collided with another driven by Edward Bedal, who also died as a result of the collision. Bedal's passenger, Beebe, survived and his testimony was admitted at trial. The evidence concerning the events of the day immediately preceding the accident established that Bedal had drunk six bottles of beer during the afternoon and evening prior to 1 a.m. on September 1, 1974, when he left the defendants' tavern in his car. Thereafter, during the ride, Beebe observed Bedal drink three more cans in the car before Beebe fell asleep. Beebe testified at trial that Bedal had weaved the car within its own lane and did not seem in control. Bedal was "pretty high" but not totally "out of it," and at one point during the ride, Beebe had said to Bedal, "You f--- up." However, Beebe had no recollection of the collision and could not therefore relate his remark to erratic driving. Beebe did not regain consciousness until he found himself in the hospital.

Evidence at trial conflicted as to what direction the two vehicles were headed prior to colliding. Testimony concerning a gouge mark on the pavement at the scene of the accident and oil spilled on the road was inconclusive to establish in which lanes the vehicles were traveling at the point of impact.

The appellate court concluded that under the circumstances presented in *Reese*, a jury's determination as to the cause of the collision, the position of the vehicles prior to impact and the events leading up to the collision would be based upon "pure speculation and conjecture." Reasoning that the proof failed to establish that intoxication was the cause of the collision, the reviewing court reversed the trial court's denials of defendants' motions for a directed verdict and for judgment notwithstanding the verdict, and ordered the entry of judgment for the defendants.

*Rose v. Brozman's Tavern, Inc.* (1981), 102 Ill. App. 3d 1087, 430 N.E.2d 282, was decided three years later by the second district and resulted in an affirmance of the trial court's granting of defendant's motion for a directed verdict on the following facts. Plaintiff's decedent, Moland, was a passenger in a vehicle driven by Eddy Stumbo the evening of September 2, 1978, when the car the two men were in

missed an "S" curve, struck a bridge abutment and overturned. Evidence admitted at trial established that Stumbo had drunk four or five vodka and grapefruit juice drinks during the afternoon at the defendant's tavern.

The issue on appeal was "whether the logical inference from the fact of the occurrence itself, that is the fact that Stumbo lost control of his car going around a curve—[was] in itself sufficient evidence of unusual or erratic behavior to raise the issue of *intoxication* and bar a directed verdict." (Emphasis added.) (102 Ill. App. 3d 1087, 1090, 430 N.E.2d 282, 284.) The court then reviewed several dramshop cases in which the sufficiency of evidence of intoxication had been challenged on motions for directed verdicts (*Hagopian v. First Venture, Ltd.* (1980), 90 Ill. App. 3d 951, 414 N.E.2d 85; *Weeks v. Witek* (1975), 33 Ill. App. 3d 916, 339 N.E.2d 43; *Bohnen v. Wingereid* (1979), 80 Ill. App. 3d 232, 398 N.E.2d 1204; *Weiner v. Trasatti* (1974), 19 Ill. App. 3d 240, 311 N.E.2d 313; *Felker v. Bartelme* (1970), 124 Ill. App. 2d 43, 260 N.E.2d 74; *Lang v. B.I.T., Inc.* (1981), 96 Ill. App. 3d 37, 420 N.E.2d 767) and concluded that in each case wherein directed verdicts for the defendant had been reversed, the reviewing court had found "either competent opinion evidence based on observation that the individual in question was intoxicated, or evidence of some erratic, unusual behavior by such person soon after consuming alcohol on defendant's premises." (*Rose v. Brozman's Tavern, Inc.* (1981), 102 Ill. App. 3d 1087, 1091, 430 N.E.2d 282, 285.) Significantly, the court also reviewed its earlier opinion in *Reese* and stated, "This court [in *Reese*] *rejected the conclusion that the patron of Pastime Inn had been intoxicated* and reversed the judgment against the tavern on the ground that there was insufficient evidence from which the jury could conclude that the collision was due to intoxication." (Emphasis added.) (102 Ill. App. 3d 1087, 1092, 430 N.E.2d 282, 286.) Similarly, the evidence in *Rose* established some drinking and a subsequent accident but lacked any showing of Stumbo's intoxication. Accordingly, the court affirmed the trial court's judgment for the defendant.

Finally, we consider the facts of *Jackson v. Navik* (1976), 37 Ill. App. 3d 88, 346 N.E.2d 116. In *Jackson*, the injured person, plaintiff's husband, consumed several drinks in the defendants' taverns the night and early morning prior to an afternoon diving accident. The evidence of intoxication included Jackson's testimony that he had consumed over 10 drinks in the defendants' taverns before Jackson, his brother and a friend, Knudson, bought and drank a bottle of vodka on Jackson's boat. They were later refused service in a bar and bought a second bottle of vodka, which was three-quarters consumed by the

time they reached a sandbar, where they anchored the boat around 3 p.m. Jackson dived off the end of the boat, hit his head on the sandbar and was rescued, unconscious, by his friends. He suffered from quadriplegia as a result of the incident.

Other facts indicated that Jackson was a good swimmer and diver and was familiar with the area of the accident and the sandbar from prior experience. The trial court granted defendants' motion for judgment at the close of plaintiff's evidence, holding that there was neither sufficient proof of intoxication at the time Jackson left the defendant's tavern nor proof of proximate causation.

On appeal, the second district appellate court reversed, finding both of the trial court's conclusions contrary to the manifest weight of the evidence. The court, in reviewing the issue of proximate causation, observed as follows:

> " '[I]t is only where the cause of injury or death would have occurred regardless of intoxication that it can be held as a matter of law the intoxication is not the proximate cause.'
>
> * * *
>
> Here a drunk takes a headfirst dive into a sand bar, in an area with which he is familiar, and then suffers a paraplegic injury. It is difficult to perceive what more evidence is required to sustain the burden of proving causal connection. The usual burden of proof would seem to be no greater than to show that it was more probable that the event was caused by intoxication than that it was not. See IPI 2d No. 21.01." (37 Ill. App. 3d 88, 94-95, 346 N.E.2d 116, 122.)

The *Jackson* court further rejected the trial court's conclusion that medical testimony was essential to prove a causal connection between the accident and Jackson's injury. Accordingly, the court remanded the cause of action for loss of means of support for a new trial before another judge.

For reasons that follow, we find that relevant facts in the present case more nearly resemble *Jackson* than they do *Reese* and *Rose*.

Plaintiffs in both *Reese* and *Rose* failed to present sufficient facts from which a jury could reasonably conclude that the driver's *intoxication* had reached a level from which they could infer that driving ability would be affected. In neither case was the driver's blood alcohol content introduced into evidence. In neither case was there evidence of unusual conduct from which intoxication could be inferred. In both cases there was evidence only of *some* drinking of alcohol at the defendants' establishments and a later fatal accident. To reach a verdict favorable to the plaintiffs in such cases, the jury would have

to infer the fact of intoxication and then infer further that the subsequent accident was caused by intoxication. It is this stacking of inferences that rendered verdicts for the plaintiffs in *Reese* and *Rose* vulnerable to attack as being based upon "pure speculation or conjecture."

By contrast, sufficient evidence of the injured party's intoxication was introduced in *Jackson* to survive defendants' motion to dismiss at the close of plaintiff's case and is alleged in the pleadings, affidavits and depositions in the present case so as to survive defendant's motion for summary judgment. In *Jackson*, as here, the injured person was familiar with the area where the accident occurred. It appears that Jackson's conduct was sufficiently unusual to result in his not being served at the last tavern the group stopped at before the accident. The act of diving off the end of a boat anchored on a sandbar further supports the conclusion that the diver was acting in an erratic manner due to his intoxication. The quantity of alcohol consumed immediately prior to the accident was sufficient to permit reasonable minds to conclude that intoxication would necessarily result. Given the evidence of Jackson's intoxication and the circumstances testified to, the injuries suffered were reasonably foreseeable. Since the facts of *Jackson* as adduced at trial were sufficient to support the conclusion that Jackson's accident was the natural and probable consequence of his intoxication (see *Danhof v. Osborne* (1957), 11 Ill. 2d 77, 142 N.E.2d 20), the reviewing court found it was error for the trial court to direct judgment for the defendants.

Similarly, and unlike *Rose* and *Reese* (as clarified by the court's analysis in *Rose*), there is direct evidence of intoxication in the present case both from observation by the plaintiff about two hours prior to the accident and from the coroner's observation and blood alcohol test results shortly after Reed's death.

■ The record before us contains evidence that the decedent's blood alcohol level following the accident far exceeded the statutory level for driving under the influence (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501(a)(1)). In addition, the decedent's appearance and conduct when last seen by the plaintiff were sufficiently unusual to indicate intoxication at that point. There is no contradictory evidence of record on the issue of the decedent's intoxication prior to the accident. Based upon the matters of record, the trial court correctly found that sufficient evidence of intoxication had been produced by plaintiff to place that issue before the jury.

Our review of the pleadings, depositions and affidavits convinces us, however, that the issue of proximate causation cannot be deter-

mined as a matter of law, and we must, therefore, reverse the judgment for defendant entered by the circuit court. An automobile accident is a reasonably foreseeable occurrence when an intoxicated person takes the wheel of an automobile. Whether he falls asleep while driving or fails to exercise care in the operation of the car, the likelihood that a drunk driver will cause injury to himself and/or others certainly is not beyond the realm of reasonable foreseeability. The fact that the decedent in the present case was allegedly familiar with the highway he was traveling when his vehicle left the road at the curve and the lack of evidence supporting any other credible explanation for the accident would support an inference that the accident in question was proximately caused by the fact, if found, of the decedent's intoxication. Under these circumstances, a question of fact is obvious concerning proximate causation.

It cannot be said that a jury finding that the accident was proximately caused by the decedent's intoxication would be based upon pure speculation and conjecture rather than upon reasonable inferences from direct and circumstantial evidence of the facts here presented. Defendant's motion for summary judgment should not have been granted.

For the foregoing reasons, we reverse the judgment of the circuit court of Fulton County and remand this cause for further proceedings.

Reversed and remanded.

SCOTT, J., concurs.

JUSTICE STOUDER, dissenting:

I disagree with the result reached by the majority. The majority relies solely upon *Jackson v. Navik* (1976), 37 Ill. App. 3d 88, 346 N.E.2d 116, which I believe is factually distinguishable from this case. In *Jackson*, the second district states that absent proof that injury or death was caused by something other than intoxication, a court cannot determine the absence of proximate cause as a matter of law. This proposition is not adhered to by other courts in this State or in subsequent decisions of the second district. Furthermore, this broad statement was not required by the facts in the *Jackson* case. I, therefore, believe that the majority ignores the weight of authority in this area, and I would have affirmed the trial court.

As the majority opinion states, *Jackson* involved a diving accident

witnessed by several members of a boating party who knew Jackson to be a good swimmer who was familiar with the sandbar and knew him to be intoxicated. On the other hand this case involves a situation where there were no witnesses to the accident and no witnesses to the deceased's behavior immediately preceding the accident. Therefore, it would be impossible in this case for a jury to determine that intoxication was the cause of the accident, unlike in *Jackson* where a jury could have determined that intoxication was the proximate cause of the accident.

Furthermore, the court in *Jackson* stated the following theory which I find no support for in subsequent cases. The court stated that

> "it is only where the cause of injury or death would have occurred regardless of intoxication that it can be held as a matter of law the intoxication is not the proximate cause." (*Jackson v. Navik* (1976), 31 Ill. App. 3d 88, 94, 346 N.E.2d 116, 122.)

This theory presumes that intoxication is the proximate cause of the injury or death absent proof to the contrary. In both *Rose v. Brozman's Tavern, Inc.* (1981), 102 Ill. App. 3d 1087, 430 N.E.2d 282, and *Reese v. Roth* (1978), 62 Ill. App. 3d 937, 379 N.E.2d 932, where no evidence existed as to the cause of the accident, the second district held that the tavern was not liable as a matter of law. In both cases the court found that a jury cannot base its decision purely upon speculation, as there must be some evidence as to the cause of the accident. Accord, *Lang v. B.I.T., Inc.* (1981), 96 Ill. App. 3d 37, 420 N.E.2d 767.

I find this case more closely analogous to the facts in *Reese v. Roth*, where Bedal, the driver of one of the automobiles involved in a two-car collision, was alleged to be intoxicated. The only survivor was the passenger in Bedal's car, who testified that Bedal was not in control of his vehicle, the car was weaving and swerved to avoid another car, and Bedal had drunk three beers while in the car before the passenger fell asleep. Both drivers were killed and there were no witnesses to the collision. Despite seemingly overwhelming evidence of intoxication, the court in *Reese* remanded with instructions to enter a directed verdict in favor of the defendant, because no evidence was presented or could have been presented from which a jury could determine the actual cause of the accident. In the instant case, where no evidence as to the cause of the accident exists, any determination of proximate cause must be based upon speculation.

The result reached by the majority runs the risk of imposing absolute liability upon dramshops for injury or death where some party in-

732

volved has been drinking, despite the fact that no proof exists that intoxication was the actual cause of the injury or death. In *Danhof v. Osborne* (1957), 11 Ill. 2d 77, 142 N.E.2d 20, the supreme court cautioned against such broad application of the Liquor Control Act (Ill. Rev. Stat. 1981, ch. 43, par. 135). The court stated:

> "The line must be drawn somewhere, for the statute obviously does not impose absolute liability or make the dramshop owner responsible for every injury incurred by a person to whom he sells liquor." (11 Ill. 2d 77, 84, 142 N.E.2d 20, 24.)

I, therefore, would have affirmed the decision of the trial court granting summary judgment because I do not believe that proximate cause was or can ever be proved in this case, and without such proof an "in consequence" case can never stand. See *Danhof v. Osborne* (1957), 11 Ill. 2d 77, 81, 142 N.E.2d 20, 22.