**Georgiana WOOD, Executrix of the Estate of Roland A. Wilhelmy and Individually, et al., Plaintiffs,**

v.

**USA, Defendant.**

**Civil Action No. 96–4514(MLP).**

United States District Court,
D. New Jersey.

May 5, 1997.

Daniel M. Waldman, Waldman, Moriarty, Halfacre, & Chiarella, Redbank, NJ, for Plaintiffs.

Peter G. O'Malley, Special Assistant United States Attorney, Newark, NJ, for Defendant.

## MEMORANDUM OPINION

HUGHES, United States Magistrate Judge.

Defendant has filed a motion *in limine* to preclude certain evidence from being presented at trial. Specifically, Defendant seeks an Order from this Court precluding Plaintiffs from introducing any evidence that the driver of a car involved in a fatal car accident consumed alcohol on the day in question. Each party has submitted moving and opposition papers. The Court reviewed the written submissions of the parties and conducted oral argument on March 3, 1997. Additionally, in order to develop a more complete record, the Court conducted an evidentiary hearing, pursuant to *Fed. R. Evid.* 104(a), on April 22, 1997.

## I. PROCEDURAL HISTORY

Plaintiffs seek to recover damages from Defendant United States as a result of a fatal car accident involving Roland A. Wilhelmy, Sr. (hereinafter "the decedent") and Kevin Simpson, a Special Agent of the Department of the Treasury, Bureau of Alcohol, Tobacco, and Firearms (hereinafter "the ATF"). At approximately 8:15 pm on June 23, 1995, the decedent was fatally injured when the car he was driving collided with Agent Simpson's vehicle at the intersection of Asbury Road and Route 33/34 in Wall Township, New Jersey. Plaintiffs essentially contend that Agent Simpson's negligence caused the fatal accident, and rely heavily on Agent Simpson's admission that he was traveling at approximately 50 miles per hour at the time of the accident, even though it was raining and there were warning signs limiting speed to 20 miles per hour in the intersection. *See* Plaintiffs' Opposition Brief at 1–2.

■ On June 14, 1996, Plaintiffs filed a wrongful death and survivorship action against Kevin Simpson only in the Superior Court of New Jersey, Monmouth County. Because Agent Simpson was acting within the scope of his employment as a Special Agent with the ATF at the time of the accident, Defendant properly removed the state action, on September 10, 1996, to the United States District Court, District of New Jersey, pursuant to the Federal Tort Claims Act. *See* 28 U.S.C.A. §§ 1346(b), 2679(b), (d). Following removal, substitution of Defendant United States as the sole defendant in this federal action was proper as only the "United States" can be sued in actions that seek damages for injuries caused by the alleged negligent acts of government employees acting within their scope of employment. *See* 28 U.S.C.A. §§ 1346(b), 2679(b), (d).

Thereafter, on October 4, 1996, Defendant filed an answer to the complaint and a counterclaim alleging certain monetary damages as a result of the decedent's alleged negligence. On October 28, 1996, Plaintiffs filed an answer to the counterclaim. On March 14, 1997, Plaintiffs filed a motion for an Order to amend the complaint seeking to add as party defendants the Municipality of Walls Township and the State of New Jersey.

Plaintiffs essentially contend that these public entities had adequate notice of the dangerous conditions of the intersection and failed to take reasonable precautions to protect motorists. *See* Certification of Plaintiffs' Counsel In Support Of Motion To Amend Complaint. On April 22, 1997, the Court granted Plaintiffs' motion for an Order to amend the complaint. Discovery has not concluded in connection with the amended complaint nor have the parties submitted a final pretrial order.

On January 17, 1997, Defendant filed the instant motion *in limine.* On March 3, 1997, the Court conducted oral argument, and on April 22, 1997, the Court conducted an evidentiary hearing, pursuant to *Fed. R. Evid,* 104(a).

## II. FACTUAL BACKGROUND

At approximately 8:15 pm on June 23, 1995, a light rain was falling and visibility was diminished due to the time of day. The decedent, who was 76 years of age, was traveling to Olympic Limousines, a shuttle service that provides transportation to and from certain airports and train stations, to pick up his son, Roland Wilhelmy, Jr. Agent Simpson, who had just attended a graduation ceremony celebrating his successful completion of a two-week training course at the Ocean County Police Academy in Lakewood, New Jersey, was traveling to his home. The graduation ceremony was held at the "Chevy 57 Cafe," which Agent Simpson attended for approximately four hours from 12:15 pm until 4:30 pm. During that time period, Agent Simpson testified that he consumed two beers; one when he first arrived at the Cafe and the other shortly after he received his graduation certificate. At around 4:30 pm, Agent Simpson left the Cafe and drove to the "New Villager Tavern" where he stayed from approximately 4:45 pm until 7:30 pm. During that time period, Agent Simpson testified that he consumed one beer upon arriving at the Tavern. Agent Simpson further testified that he finished this beer at least one hour before leaving the Tavern at 7:30 pm.

Driving conditions at the time of the accident were not good. The impending darkness and steady rain resulted in wet road-

ways and diminished visibility. Agent Simpson, by his own admission, was traveling approximately 50 miles per hour, eastbound on Route 33/34, a two lane highway, heading toward the intersection of Route 33/34 and Asbury Road. The decedent was traveling southbound on Asbury Road approaching the same intersection where Olympic Limousines is located.

Traffic control devices in the area of the intersection consisted of a posted stop sign for motorists traveling southbound on Asbury Road. For motorists traveling eastbound on Route 33/34, the posted speed limit was 50 miles per hour. However, at approximately .23 miles before the intersection, there was: (1) a yellow colored speed limit sign warning motorists to reduce speed to 20 miles per hour and (2) a yellow and black colored sign warning that traffic was approaching a circle. Additionally, at approximately 659 feet from the intersection, there was a yellow colored sign on eastbound Route 33/34 warning motorists of slippery roadway conditions.

Upon approaching the intersection, the parties dispute whether the decedent's vehicle actually came to a complete stop at the posted stop sign on Asbury Road. In any event, it appears that the decedent did not see Agent Simpson's vehicle when he pulled out into the intersection. Agent Simpson's vehicle struck the decedent's vehicle in the area of the right front door and fender, propelling the decedent's vehicle approximately 117–123 feet before finally coming to rest. The decedent, who was not wearing a seat belt, remained wedged underneath the dashboard of his vehicle for approximately one hour before emergency personnel could extricate him. Although the decedent complained of leg and back pain after being removed from his vehicle, emergency personnel told investigating officers of the Wall Township Police Department that his vital signs and blood pressure were good. Emergency personnel then transferred the decedent to Jersey Shore Medical Center where he later died of multiple thoracic injuries at approximately 11:26 pm. Except for slight pain in his wrists and knees, Agent Simpson escaped the accident with minor injuries and declined to be taken to the hospital.

Following the accident, Agent Simpson placed two telephone calls from a phone located at Olympic Limousines. He first called 911 to report the accident and he then called his wife to advise her that he was involved in a car accident and that he would need a ride home. When police arrived on the scene, Agent Simpson: (1) identified himself as the driver of the other vehicle involved in the accident and (2) informed them that he was an ATF Agent and that he was driving a government owned vehicle. Agent Simpson also asked Officer Patrick Scannell, one of the investigating officers, if he could place a phone call to Agent Dominick Polifrone, Agent Simpson's immediate ATF supervisor. Officer Scannell permitted Agent Simpson to use his cellular phone which was located inside his patrol car. Agent Simpson contacted Agent Polifrone and advised him, in part, that he had been in a serious car accident, that his car was probably totaled and that the other driver appeared to be injured. When asked by Agent Polifrone whether he had been drinking, Agent Simpson responded in the negative. However, Lieutenant James McCafferey, who was inside the patrol car with Agent Simpson when he placed the call, detected a very faint odor of alcohol on Agent Simpson's breath. Lieutenant McCafferey advised Officer Scannell of his discovery and requested that he inquire into Agent Simpson's possible intoxication.

When asked by Officer Scannell whether he had been drinking, Agent Simpson advised him that he had consumed three beers earlier in the day. Officer Scannell then conducted a simple field sobriety test, paying close attention to Agent Simpson's speech and gait. In doing so, Officer Scannell made the following observations of Agent Simpson:

1. Agent Simpson recited the alphabet from A to Z correctly and without trouble.

2. Agent Simpson provided his name, residence, date of birth and the day of the week correctly and without trouble.

3. Agent Simpson's speech was alright and his eyes were clear.

4. Agent Simpson walked a distance of approximately 35 feet in an erect manner and in good stride.

Based on his observations, Officer Scannell determined that there was no evidence of intoxication on the part of Agent Simpson, and therefore, no probable cause to conduct a blood or breathalyzer test.

Officer Scannell testified at the evidentiary hearing that he did not conduct other forms of field sobriety testing on Agent Simpson due to: (1) his observations of Agent Simpson in response to his initial testing and (2) the nature of Agent Simpson's injuries. For instance, Officer Scannell testified that he could have required Agent Simpson to submit to a Balance Test, which would have required him to essentially balance himself on one leg for a 10 second period while extending the other leg forward. However, Officer Scannell indicated that this form of testing would not necessarily be reliable due to Agent Simpson's injuries, which included pain in his knees.

Additionally, the Court notes that the investigating officers, based on their own observations at the accident scene and on the statements from emergency personnel, did not conduct their investigation as if there was a fatality involved. According to accepted protocol, when a car accident results in a fatality, police are required to conduct a very thorough and detailed investigation. The Monmouth County Uniform Fatal Motor Vehicle Accident Investigation Manual sets forth the protocol for police to follow when investigating fatal motor vehicle accidents. According to this Manual, when either alcohol or drugs are suspected to be involved in a fatal accident, standard breath test procedures should be followed. In this regard, an officer's authority permits him to consider all relevant circumstances in determining whether to require an individual suspected of driving under the influence of alcohol to submit to breathalyzer testing.

The investigating officers did not require Agent Simpson to submit to a blood or breathalyzer test for two reasons. First, Officer Scannell specifically determined, after conducting a simple field sobriety test, that there was no probable cause to require Agent Simpson to take the test. Second, the investigating officers specifically determined, based on statements from emergency personnel and on their own observations of the accident scene, that this was not a fatal car accident.

Agent Simpson remained at the accident scene in the presence of the investigating officers until the decedent was finally extricated from his vehicle. Thereafter, Agent Simpson left the accident scene with his wife, and later that evening, placed a second phone call to Agent Polifrone at which time Agent Simpson did, in fact, advise him that he consumed alcohol prior to the accident. Agent Simpson testified that he initially told Agent Polifrone that he was not drinking because he misunderstood Agent Polifrone's question. Specifically, Agent Simpson testified that he thought Agent Polifrone had asked whether he was driving drunk or intoxicated, not simply whether he had consumed alcohol.

At the evidentiary hearing, held pursuant to *Fed.R.Evid.* 104(a), the Court heard testimony from ATF Agent Kevin Simpson, Officer Patrick Scannell and Lieutenant James McCafferey, and considered the following exhibits of Plaintiffs and Defendant:

P–1. Report of Police Management Consultants Services, Inc.;

P–2. Wall Family Medical Group Records of K. Simpson;

P–3. Medical Records of K. Simpson from R. Grossman, dated July 20, 1995;

P–4. Plaintiffs' Engineering Report of S. Batterman, P.H.D., dated March 13, 1995;

P–5. Autopsy Protocol of R. Wilhelmy;

P–6. Death Certificate of R. Wilhelmy;

P–7. Wall Township Accident Report of Prl. P. Scannell;

P–8. Prl. W. Collinson report of July 7, 1995;

P–9. Prl. P. Scannell narrative report of June 23, 1995;

P–10. Lt. J. McCafferey narrative report of June 30, 1995;

P–11. Cp. M. Textor narrative report, not dated;

P–12. MONOC Records as to R. Wilhelmy;

P–13. Monmouth County Uniform Fatal Motor Vehicle Accident Investigation Manual, Chapter III, Protocol of Investigation, pp. 8–14;

P–14. Statement of R. Wilhelmy of June 30, 1995;

P–15. Statement of K. Simpson of June 30, 1995;

P–16. Portions of ATF Report of Investigation of September 27, 1995;

P–17. Portions of ATF Report of Investigation of October 27, 1995;

P–18. Depositions of Plaintiff; R. Wilhelmy: Cover Page and pp. 33–35, 47–56; 59–63, & 73;

P–19. Deposition of T. Kennedy, MONOC.

D–1. Report of A & C Automative Consulting, dated February 6, 1997;

D–2. Report of A & C Automative Consulting, dated April 12, 1997;

D–3. CV of Erik J.A. Carlson.

D–4. Toxicology Report, dated April 4, 1997.

## III. DISCUSSION

### A. Introduction

Defendant has filed a motion *in limine* for an Order precluding Plaintiffs from introducing any evidence of the use or consumption of alcohol by Agent Simpson prior to the time of the fatal car accident involving the decedent and Agent Simpson. Specifically, Defendant seeks to preclude evidence that: (1) Agent Simpson consumed three beers on the day of the accident and (2) an investigating officer detected the faint odor of alcohol on Agent Simpson's breath after the car accident. *See* Defendant's Brief at 1. Relying on *Gustavson v. Gaynor*, 206 N.J.Super. 540, 545, 503 A.2d 340 (App.Div.1985), the leading New Jersey case concerning the admissibility of evidence of alcohol consumption, Defendant contends that the prejudicial impact of such evidence, without sufficient supplemental evidence indicating Agent Simpson's actual intoxication or impairment, clearly outweighs its probative value and

should be excluded. *See* Defendant's Brief at 3–4.

In opposition to Defendant's motion, Plaintiffs assert that there is sufficient supplemental evidence of Agent Simpson's intoxication or impairment such that the probative value of evidence of Agent Simpson's alcohol consumption prior to the accident clearly outweighs the unfair prejudice to Defendant and should be admissible. The proposed supplemental evidence of Agent Simpson's intoxication or impairment includes: (1) Agent Simpson's admission that he consumed three beers during the afternoon and early evening on the day of the accident; (2) detection of the odor of alcohol on Agent Simpson's breath by an investigating officer after the accident; and (3) Agent Simpson's admission that he was traveling at approximately 50 miles per hour at the time of the accident, even though it was raining and there were warning signs limiting speed to 20 miles per hour in the intersection.

Additionally, Plaintiffs proffer a "benign conspiracy theory" between Agent Simpson and fellow law enforcement agents of the Wall Township Police Department as additional supplemental evidence of Agent Simpson's intoxication or impairment. *See* Plaintiffs' Brief at 7–8. Plaintiffs' theory is based on the inference that the investigating officers of the Wall Township Police Department afforded Agent Simpson special treatment, or professional courtesy, because: (1) they knew he was a Special Agent with the ATF and (2) one of the investigating officers knew Agent Simpson. Corporal Michael Textor, one of the investigating officers, and Agent Simpson apparently knew each other through a mutual friend. Although the two men were only casual friends, they did recognize each other at the accident scene.

Specifically, Plaintiffs claim that as a fellow law enforcement agent, the investigating officers were protecting "one of their own" by not requiring Agent Simpson to submit to other field sobriety tests, which include a breathalyzer or blood alcohol test, that may have revealed Agent Simpson's intoxication. Plaintiffs argue that under normal circumstances, an individual in Agent Simpson's situation, who was involved in a fatal car

accident, smelled of alcohol, and admitted consuming alcohol on the day of the accident, would have been required to submit to a breathalyzer or blood alcohol test. Accordingly, Plaintiffs argue that an inference can be drawn that the investigating officers conspired to protect Agent Simpson and that this inference constitutes sufficient supplemental evidence of Agent Simpson's intoxication or impairment.

At oral argument on March 3, 1997, the Court indicated, based. on the record to date, that Plaintiffs' "benign conspiracy theory" could not be deemed supplemental evidence of Agent Simpson's intoxication since it was nothing more than pure speculation on the part of Plaintiffs. However, in order to allow Plaintiffs to pursue their theory, and to develop a sufficient record for deciding this *in limine* motion, the Court permitted Plaintiffs to conduct an evidentiary hearing, pursuant to *Fed.R.Evid.* 104(a), on April 22, 1997.

█ With respect to the admissibility of evidence of alcohol consumption, the Third Circuit Court of Appeals requires that a District Court apply state law rules of admissibility when federal jurisdiction is premised on diversity of citizenship or on a claim brought under the Federal Tort Claims Act. *Hulmes v. Honda Motor Co. Ltd.,* 936 F.Supp. 195, 199 (D.N.J.1996) (citing *Rovegno v. Geppert Bros., Inc.,* 677 F.2d 327, 329 (3d Cir.1982); *Straley v. U.S.,* 887 F.Supp. 728, 737 (D.N.J.1995)). Since the cause of action in the present case is brought pursuant to the Federal Tort Claims Act, this Court must apply New Jersey state rules of admissibility to determine the admissibility of Agent Simpson's alcohol consumption.

#### B. *Relevance*

Except as otherwise provided by rule or law, relevant evidence is admissible. *See N.J.R. Evid.* 402; *Fed.R.Evid.* 402. Whether applying *N.J.R. Evid.* 401 or *Fed.R.Evid.* 401, "relevant evidence is that which tends to prove or disprove any fact that is of consequence to the outcome of this action." *Hulmes,* 936 F.Supp. at 201. In the instant case, Defendant does not dispute the fact that Agent Simpson's alleged alcohol consumption is probative and relevant to Plain-

tiffs' claim. Plaintiffs would certainly have come a long way in proving Defendant's negligence if they could establish that Agent Simpson was intoxicated at the time of the fatal accident. *See Straley,* 887 F.Supp. at 738 (finding evidence of alcohol consumption probative of intoxication, and therefore, relevant to negligence claim); *Gustavson,* 206 N.J.Super. at 544, 503 A.2d 340 (finding evidence of intoxication relevant to issue of negligent driving). Thus, the only issue before this Court is whether the probative value of Agent Simpson's alcohol consumption is outweighed by the potential for unfair prejudice to Defendant. *See Fed.R.Evid.* 403; *N.J.R. Evid.* 403.

#### C. *Unfair Prejudice*

In New Jersey, evidence of alcohol consumption may be excluded as unfairly prejudicial pursuant to *N.J.R. Evid.* 403. Under *N.J.R. Evid.* 403, the functional equivalent of *Fed.R.Evid.* 403, "relevant evidence may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury...." *Hulmes,* 936 F.Supp. at 200–01. The Court is vested with broad discretionary authority to determine the balancing issue presented by *Fed.R.Evid.* 403. *Abrams v. Lightolier, Inc.,* 50 F.3d 1204, 1213 (3d Cir. 1995); *Garden v. General Electric Company,* No. 91–1204, 1992 WL 184345, at *2 (D.N.J. July 6, 1992). When conducting a Rule 403 inquiry, the Court must "balance the probative value of and the need for the evidence against the harm likely to result from its admission." *Fed.R.Evid.* 403, Advisory Committee Note.

#### D. *Supplemental Evidence*

█ As articulated in *Gustavson,* the leading New Jersey case on the admissibility of evidence of alcohol consumption, evidence of alcohol consumption alone is prejudicial and will be excluded, pursuant to *N.J.R. Evid.* 403, unless there is supplementary evidence that *reliably* supports a conclusion that the party against whom it will be introduced was actually impaired or unfit to drive. *Gustavson,* 206 N.J.Super. at 545, 503 A.2d 340 (emphasis added); *see also Hulmes,* 936

F.Supp. at 201–02; *Straley*, 887 F.Supp. at 737. In *Gustavson*, the New Jersey Superior Court emphasized that:

> The mere fact that a driver had consumed some alcoholic beverages is by itself insufficient to warrant an inference that the driver was intoxicated and that the intoxication was of such a degree as to render him unfit to drive at the time of the accident. The admission of such testimony without supporting evidence is unduly prejudicial in view of its capacity to inflame the jury.

*Gustavson*, 206 N.J.Super. at 545, 503 A.2d 340.

The Court notes that under the Federal Tort Claims Act, 28 U.S.C.A. § 2402, this case will be tried before a judge and not a jury, but given the issue here, believes this to be a "distinction without a difference."

■ Evidence of a blood alcohol level at or above the legal limit of .10%, in and of itself, constitutes independent supplementary evidence of intoxication. *Hulmes*, 936 F.Supp. at 205–06. Other examples of supplemental evidence of intoxication includes, without limitation, "excessive drinking, driving at an excessive rate of speed, recklessness or erratic driving, drunken behavior at the accident scene, or similar acts suggestive of an unfitness to drive." *Gustavson*, 206 N.J.Super. at 544–45, 503 A.2d 340 (citing *Rovegno* 677 F.2d at 330–31). Thus, under the *Gustavson* test, absent sufficient supplemental evidence that reliably supports a conclusion that the party against whom it will be introduced was actually impaired or unfit to drive, any evidence of alcohol consumption must be excluded.

■ Here, placing aside Plaintiffs' "benign conspiracy theory" for a moment, Plaintiffs' proffered supplemental evidence, fairly condensed, includes: (1) Agent Simpson's admission that he consumed three beers during the late afternoon on the day of the accident; (2) detection of the odor of alcohol on Agent Simpson's breath by an investigating officer after the accident; and (3) Agent Simpson's admission that he was traveling at approximately 50 miles per hour at the time of the accident, even though it was raining and there were warning signs limiting speed to 20 miles per hour in the intersection. However, after evaluating the nature and quality of supplemental evidence considered in other cases, Plaintiffs' proffered supplemental evidence of intoxication is insufficient to satisfy the *Gustavson* test because it does not reliably support a conclusion that Agent Simpson was impaired or unfit to drive at the time of the accident. *See Hulmes*, 936 F.Supp. at 204–06; *Straley*, 887 F.Supp. at 738–39; *Clement v. Consolidated Rail Corp.*, 130 F.R.D. 530, 537–38 (D.N.J.1990).

For instance, in *Straley*, the District Court considered the following supplemental evidence of intoxication in determining the admissibility of a plaintiff's consumption of alcohol: (1) plaintiff's admission that he consumed four beers within the hour preceding the accident; (2) detection of alcohol on plaintiff's breath; (3) blood alcohol test revealing blood alcohol level slightly below .10% standard for legal intoxication; and (4) expert conclusions concerning plaintiff's potential impairment, actual consumption and blood alcohol content. *Straley*, 887 F.Supp. at 738–39. Despite what appears to be notable evidence of intoxication, the *Straley* Court determined that there was insufficient supplemental evidence of intoxication to satisfy *Gustavson*, and therefore, excluded evidence of plaintiff's alcohol consumption as unfairly prejudicial, pursuant to *N.J.R. Evid.* 403. *Id.* at 739. In reaching this result, the *Straley* Court emphasized that there was "no on-the-scene evidence that [plaintiff] was actually impaired at the time of the accident." *Id.*

Similarly, despite evidence of a blood alcohol level of .051%, the *Clement* Court concluded that there was insufficient supplemental evidence of intoxication to admit evidence of a plaintiff's alcohol consumption. *Clement*, 130 F.R.D. at 537–38. Among the other proffered supplemental evidence the Court evaluated was: (1) excessive speed; (2) reckless driving; and (3) the absence of any skid marks on the roadway prior to or after the initial collision. *Id.* at 535. In precluding evidence of plaintiff's alcohol consumption, the Court, similarly to the *Straley* Court, placed considerable importance on the fact

that there was "no testimony or evidence which suggest[ed] intoxication or impairment *prior to or at the scene* of the accident." *Id.* at 537 (emphasis added).

■ However, the mere fact that there is no on-the-scene evidence that an individual was impaired or intoxicated does not necessarily mean that there is insufficient supplemental evidence to satisfy the *Gustavson* test. *See Hulmes,* 936 F.Supp. at 205–06. Indeed, in *Hulmes,* the District Court determined that there was sufficient supplemental evidence of intoxication to admit evidence of a plaintiff's alcohol consumption despite a lack of the traditional on-the-scene evidence of intoxication. *Id.* The plaintiff in *Hulmes* was severely injured as the result of a violent collision which occurred while he was operating a three-wheeled all-terrain vehicle. *Id.* at 198. Emergency personnel immediately intubated the plaintiff with an endotracheal tube, ventilated him with a bag and mask resuscitator, and immobilized him on a backboard. *Id.* at 205. As could be expected, the serious nature of the plaintiff's injuries resulted in no eyewitness observations of the smell of his breath, his speech, physical coordination, or demeanor at the scene of the accident. *Id.*

Notwithstanding the lack of traditional on-the-scene evidence of intoxication, the *Hulmes* Court admitted evidence of the plaintiff's alcohol consumption based in part on the following supplemental evidence of intoxication: (1) two defense expert conclusions that plaintiff's blood alcohol level at the time of the accident was over the legal limit of. 10%; (2) disputed testimony that plaintiff was traveling at an excessive rate of speed; and (3) the apparent absence of adverse road or weather conditions at the time of the accident. *Id.* at 205–06. In reaching this result, the *Hulmes* Court specifically emphasized that: (1) the peculiar factual circumstances of the case did not invoke the traditional on-the-scene evidence of intoxication "which might otherwise be expected from eyewitnesses at the scene" and (2) it was relying heavily on expert conclusions that plaintiff's blood alcohol level at the time of the accident was above the legal intoxication limit of .10%. *Id.*

In the instant case, there is no independent evidence of Agent Simpson's blood alcohol content at the time of the accident, nor have Plaintiffs submitted any expert conclusions concerning his potential impairment, actual consumption or blood alcohol content. Defendant, however, offers expert opinion that *if* Agent Simpson's testimony was accurate, his blood alcohol level at the time of the accident would have been less than .01%, well below the legal intoxication limit of .10%. *See* Exhibit D–4, Toxicology Report, dated April 4, 1997.

Additionally, except for the providential fact that an investigating officer detected "a very faint odor of alcohol" on Agent Simpson's breath, there is virtually no on-the-scene evidence that Agent Simpson was actually impaired at the time of the accident. *See Straley* 887 F.Supp. at 739. Indeed, there was: (1) no indication that Agent Simpson was loud or abrasive to anyone after the accident; (2) no indication that his speech was slurred; (3) no indication that he appeared disheveled; and (4) no indication that his eyes were red or bloodshot. *See Hulmes,* 936 F.Supp. at 206 (comparing *State v. Morris,* 262 N.J.Super. 413, 621 A.2d 74–(App. Div.1993) with *State v. Oriole,* 243 N.J.Super. 688, 581 A.2d 142 (Law Div.1990)). In fact, Officer Scannell, who personally observed Agent Simpson's speech and gait, specifically concluded that there was no evidence of intoxication, and therefore, no probable cause to conduct a breathalyzer or blood alcohol test.

Furthermore, unlike the plaintiff in *Straley,* Agent Simpson did not admit to consuming alcohol immediately prior to the accident. Rather, he testified that he consumed approximately three beers at the "Chevy 57 Cafe" and the "New Villager Tavern" throughout the course of a seven hour day, the last beer being consumed at least one hour before he operated his vehicle. This is quite a different scenario than when a party admits consuming a significant amount of alcohol within the hour preceding the accident. *See Straley,* 887 F.Supp. at 738.

Moreover, not only is there an absence of expert testimony concerning blood alcohol level in this case, but there are also no

peculiar facts that would make "the traditional indicia" of on-the-scene evidence of intoxication unavailable. *See Hulmes*, 936 F.Supp. at 205. Unlike *Hulmes*, where the plaintiff's injuries were so severe that they created "an understandable absence of the typical 'supplemental evidence' of intoxication which might otherwise be expected from eyewitnesses at the scene," Agent Simpson's injuries were very minor. *Id.* The investigating officers were able to personally observe his speech, demeanor, motor skills and physical coordination and determine that Agent Simpson was not intoxicated. Thus, this case does not invoke *Hulmes'* concern that the traditional indicia of intoxication may be unavailable due to the nature of an injury. *Id.*

At first blush, Agent Simpson's claim that he consumed only three beers over a seven hour period, while celebrating with fellow law enforcement agents after having completed a presumably intense two week training program, seems implausible. However, the Court heard Agent Simpson testify at the evidentiary hearing and permitted Plaintiffs' Counsel a full opportunity to test his credibility. Additionally, there is no other evidence to establish that Agent Simpson had more than three beers throughout the day. For instance, there has been no testimony from any witness concerning Agent Simpson's consumption of alcohol or that he showed signs of intoxication at any time. There are no witnesses from the accident scene, emergency personnel or spectators, who have testified to any evidence of intoxication. There are no witnesses from either of the two bars who have contradicted Agent Simpson's account of his alcohol consumption. Accordingly, based on Agent Simpson's testimony and the surrounding circumstances, the Court cannot find any basis to believe that Agent Simpson's testimony is anything other than truthful.

Lastly, the Court notes that evidence of Agent Simpson's alleged excessive speed and apparent failure to adhere to warning signals at the time of the accident constitutes *some* supplemental evidence of intoxication or impairment. However, the Court would be remiss if it did not consider the fact that sober drivers, unfortunately, often ignore warning or cautionary signs on the roadway. Indeed, "[a] miscalculation with regard to speed or braking could easily result in failure to negotiate an 'S' curve by a sober person." *Rose v. Brozman's Tavern Inc.*, 102 Ill.App.3d 1087, 58 Ill.Dec. 340, 344, 430 N.E.2d 282, 286 (1981); *see also Clement* 130 F.R.D. at 537 (emphasizing that "the [mere] fact that [the plaintiff] was unable to avoid a collision with a chassis, which might not have been easily visible, does not lead to the conclusion that [the plaintiff] was driving erratically or recklessly").

■ The Court also notes that at a full trial, the fact finder could conclude that Agent Simpson's speed at the time of the accident, given the driving conditions and speed warnings, constitutes negligence. However, the Court finds that the evidence of excessive speed, after carefully considering its context, is alone insufficient to satisfy the *Gustavson* test because it does not *reliably* support a conclusion that Agent Simpson was impaired or unfit to drive at the time of the accident. This is especially true in light of Detective Scannell's observations and the fact that it was raining and the roads were wet at the time of the accident. *See Hulmes*, 936 F.Supp. at 205–06 (determining that an apparent *absence* of adverse road and weather conditions was an example of supplemental evidence of intoxication) (emphasis added).

Accordingly, evidence of Agent Simpson's consumption of alcohol should be excluded, unless the Court finds that Plaintiffs' "benign conspiracy theory" provides the requisite supplemental evidence of intoxication to satisfy the *Gustavson* test.

E. *Plaintiffs' "Benign Conspiracy Theory"*

■ The fact that this case concerns police officers investigating a fellow law enforcement agent, coupled with the fact that the police officers did not require a breathalyzer or blood test, makes this case somewhat unique. Plaintiffs' "benign conspiracy theory" is based on the "inference" that the investigating officers of the Wall Township Police Department afforded Agent Simpson special treatment, or professional courtesy,

because: (1) they knew he was a Special Agent with the ATF and (2) one of the investigating officers knew Agent Simpson and considered him a casual friend. Plaintiffs contend that if Agent Simpson was not a law enforcement officer and was not an acquaintance of one of the investigating officers, the police would certainly have required him to submit to a more formal field sobriety test which would include a breathalyzer or blood alcohol test. Plaintiffs stress that under normal circumstances, an individual in Agent Simpson's situation, who was involved in a fatal car accident, smelled of alcohol, and admitted consuming alcohol on the day of the accident, would certainly have been required to submit to a breathalyzer or blood alcohol test.

This Court concludes, after having afforded Plaintiffs a full opportunity to develop the record, that this argument does not measure up to a fair "inference," but rather invites pure speculation on the part of the ultimate fact finder. As already mentioned, there is virtually no on-the-scene evidence that Agent Simpson was actually impaired at the time of the accident. Indeed, Officer Scannell, who personally observed Agent Simpson's speech and gait after the accident, specifically concluded that there was no evidence of intoxication, and therefore, no probable cause to conduct a breathalyzer/blood alcohol test. However, Plaintiffs argue that there is an understandable absence of the traditional on-the-scene evidence of intoxication because the officers conspired to suppress this evidence. Thus, to accept Plaintiffs' conspiracy theory, the Court would essentially have to find that the investigating officers were willing to risk their reputations and careers as law enforcement agents by lying and falsifying evidence in order to protect Agent Simpson. Absent any credible evidence whatsoever that the investigating officers were willing to take such risks, the Court must reject Plaintiffs' theory as rank speculation.

After hearing the testimony of the witnesses and evaluating the parties' exhibits, the Court finds that there is no evidence of a conspiracy, benign or otherwise, between the investigating officers, Agent Simpson or anyone else. Other than the faint odor of alcohol emanating from Agent Simpson, Officer Scannell and Lieutenant McCafferey both testified that Agent Simpson did not exhibit any other signs of intoxication. Additionally, based on their own observations at the scene and on statements of emergency personnel, the investigating officers concluded that the decedent's injuries were not serious enough to cause death, and properly, did not conduct an investigation as if there was a fatality.

Additionally, Plaintiffs also seem to argue that Agent Simpson's apparent lack of credibility should also be considered by the Court in evaluating his potential intoxication. Specifically, Plaintiffs contend that Agent Simpson's credibility is severely damaged by: (1) the fact that he did not immediately tell his supervisor that he was drinking and (2) an inference that Agent Simpson specifically avoided the risk of taking a blood test by seeking medical treatment for his injuries the following morning rather than immediately after the accident. *See* Plaintiffs' Opposition Brief at 8. However, the Court finds that his actions are reasonably explainable, and without any contradictory evidence, cannot find any basis to believe that Agent Simpson's testimony is anything other than truthful.

Due to the unique circumstances of this case, the Court has conducted an evidentiary hearing, pursuant to *Fed.R.Evid.* 104(a), in order to test the reliability of the proffered "supplemental evidence" of intoxication—most notably, Plaintiffs' conspiracy theory. The Court notes, however, that an evidentiary hearing may not be necessary in every case.

Because of their authority over fellow citizens, law enforcement agents are expected to conform to a high standard of conduct. Their actions, particularly while operating in the scope of their employment, should be subject to careful scrutiny—for their sake as well as for maintaining the public's confidence. A court, given circumstances similar to those present here, should make special inquiry to ensure that police officers are given no benefit greater than any other citizen. Here, the Court afforded Plaintiffs the opportunity to test their conspiracy theory

**1392**

by conducting a full evidentiary hearing. After having done so, however, the Court finds that there exists insufficient supplemental evidence of intoxication, and further, that the investigating officers acted properly at all times.

Therefore, although relevant to the issue of negligence, the probative value of the evidence of Agent Simpson's alcohol consumption is outweighed by the potential for unfair prejudice, pursuant to *N.J.R.Evid.* 403. Accordingly, all evidence of Agent Simpson's alcohol consumption on the day of the fatal car accident in question must be precluded at trial.

## IV. CONCLUSION

For the reasons expressed here, this Court will grant Defendant's motion *in limine* and order that any evidence of Agent Simpson's alcohol consumption be precluded at trial.